ALFRED S. REGNERY, Plaintiff-Appellee, v. WALTER C. REGNERY *et al.*, Defendants-Appellants (Gretchen Regnery *et al.*, Plaintiffs; David R. Myers *et al.*, Defendants).

First District (3rd Division)  1—89—2087

Opinion filed March 20, 1991.

Arvey, Hodes, Costello & Burman, of Chicago (Scott Hodes and Irwin I. Zatz, of counsel), for appellants.

Defrees & Fiske, of Chicago (Timothy J. Riordan, of counsel), for appellee.

JUSTICE WHITE delivered the opinion of the court:

Appellants Gretchen Regnery, Anne Regnery, Verla Regnery, Lynn Regnery, Peter Regnery, and other shareholders of Joanna Western Mills Company (the Regnerys) appeal from an order of the circuit court denying their motion for summary judgment and granting summary judgment in favor of Alfred Regnery (Alfred) in Alfred's declaratory judgment action. The Regnerys argue that the trial court erred in finding that Alfred was authorized to act as the Regnerys' agent in settling a lawsuit filed by them.

The Regnerys were shareholders in Joanna Western Mills Company (JWM). In August 1981, several JWM shareholders, including Verla and Lynn Regnery, entered into a voting trust agreement. Pursuant to the agreement 3,745 shares of JWM stock were deposited into a voting trust and Frederick Regnery, Henry Regnery, and David Meyers were named as trustees. The voting trust agreement also provided that any decision regarding a sale of any of the shares of JWM would require the unanimous consent of the trustees.[1]

In September 1983, there were 7,483½ shares of JWM stock outstanding. On September 13, the JWM board of directors adopted a resolution calling for the sale of an additional 600 shares of common stock to Frederick and David Meyers (the Meyerses) at a price of $500 per share. At this time, Frederick Meyers was the president of

---

[1]Verla Regnery is the mother of Frederick, Gretchen, and Anne Regnery. Alfred Regnery is the son of Henry Regnery. Frederick and David Meyers; Peter and Lynn Regnery; and Frederick, Gretchen, and Anne Regnery are first cousins.

JWM and the owner of five shares of JWM common stock, while David Meyers was the vice-president and the owner of 92½ shares of common stock. A special shareholder meeting was held on September 26, at which two of the trustees under the voting trust agreement, David Meyers and Henry Regnery, voted the 3,745 trust shares in favor of the resolution. The third trustee, Frederick Regnery (Frederick), opposed both the resolution and the vote of the trust shares in favor of the sale. A total of 5,211 shares was voted in favor of the resolution, and the sale to the Meyerses was approved.

In 1986, negotiations began for the sale of all of JWM's stock. Proposals for the purchase of the stock were submitted by Frederick and by Kenner & Company, Inc. (Kenner). At a special board of directors meeting held August 15, 1986, the board approved the Kenner proposal. Also at that meeting, the board authorized a payment of $150,000 to Frederick in exchange for his covenant not to sue JWM, its officers, or shareholders in connection with the Kenner acquisition or the issuance of JWM's capital stock. The board also proposed that Alfred be appointed agent for the shareholders in connection with the Kenner acquisition.

On August 21, 1986, an acquisition agreement was executed, providing for the acquisition and merger of JWM into a wholly owned subsidiary of Kenner. Under the terms of the acquisition agreement, JWM shareholders would be paid $7,766 for each share of common stock they owned.

In September 1986, copies of an agreement of merger, escrow agreement, and agency agreement were sent to JWM shareholders along with a consent agreement. The consent agreement authorized the execution of the merger, escrow, and agency agreements and shareholders were instructed to sign the consent if they approved of these agreements. The consent agreement also authorized the payment of $150,000 to Frederick in exchange for his release of "all claims against this corporation, its directors, officers and stockholders."

The agency agreement appointed Alfred as agent on the shareholders' behalf and provided that he would have full power and authority to act as agent for the JWM shareholders in matters pertaining to the acquisition, merger, escrow, and agency agreements and the transactions contemplated thereunder. The agreement also provided that Alfred would have the authority to settle or dispose of any liability arising with respect to those agreements, including Frederick's claims and the settlement thereof, and claims asserted against the shareholders in connection with the sale of company stock.

On September 12, the shareholders executed the consent agreement, thereby approving the merger and acquisition and appointing Alfred as their agent in accordance with the agency agreement.

The sale to Kenner was closed on October 9, 1986, and the JWM shareholders each received $7,097 in cash per share owned. The remaining $669 per share was paid into an escrow account to cover certain corporate liabilities.

In late October, another special meeting of the JWM board of directors was held. At the meeting, after the board acknowledged that Frederick "may have claims, charges and causes of action arising from the sale of stock to Kenner & Company, Inc. and past issuance or repurchases of stock," Henry Regnery, chairman of the board of JWM; Alfred, on behalf of the shareholders of JWM; and Frederick, in exchange for the agreed upon payment of $150,000, executed a settlement agreement and covenant not to sue.

The settlement agreement and covenant stated that Frederick "waives and releases any claims, charges or causes of action of any nature whatsoever known to him, which he may have against the Company *** with respect to any matter whatsoever arising out of or in connection with previous issuances or repurchases of the Company's stock or the Kenner Acquisition or any other acquisition effected before January 1, 1987."

Eight months later, in July 1987, the Regnerys filed suit against the Meyerses in circuit court. The Regnerys' "Complaint Against Trustee And For Accounting" alleged that the 1983 sale of 600 shares of stock to the Meyerses constituted a common law breach of trust and a breach of the express terms of the 1981 voting trust agreement. The Regnerys sought recovery of the full amount paid by Kenner to the Meyerses for the 600 shares and punitive damages for the breach of trust.

The Meyerses filed a motion for judgment on the pleadings alleging that the cause of action advanced by the Regnerys belonged to JWM and that, because the Regnerys were no longer shareholders of JWM, their action could not proceed. This motion was denied.

Following the denial of their motion, the Meyerses filed their answer and affirmative defenses. The Meyerses alleged that the Regnerys were estopped from suing by their conduct in authorizing and paying part of the settlement of Frederick's claims against JWM and in inducing the Meyerses to consent to the settlement of Frederick's claims. The Meyerses also argued that the Regnerys lacked standing to bring suit because, under the terms of the agency agreement, they

transferred to Alfred their right to bring any action arising from the sale of shares of JWM.

The Meyerses also filed a counterclaim against Verla, Gretchen, Anne, and Peter Regnery and a third-party complaint against Frederick. In the counterclaim, the Meyerses alleged that the Regnerys' suit was in violation of the consent signed by all JWM shareholders, including Verla, Gretchen, Anne, and Peter. In their third-party complaint, the Meyerses alleged that Frederick instigated the suit against them in violation of his settlement agreement and covenant not to sue.

At the same time, the Meyerses contacted Alfred and requested that he release the Regnerys' claims against them. The Meyerses' request was based on their belief that, under the agency and consent agreements, the Meyerses had the right to call upon Alfred to defend the claims against them and Alfred had the power to dispose of the claims because they arose in connection with the sale of the company stock. The Meyerses later made a written demand on Alfred: (1) to repay any sums found to be due and owing in connection with the Regnerys' lawsuit; (2) to assume the defense of the Regnerys' lawsuit or repay the Meyerses for the cost of their defense; and (3) to execute a release of the claims asserted in the Regnerys' lawsuit, pursuant to the authority granted to him under the shareholders' consent.

In response to the Meyerses' demand, Alfred filed a complaint for declaratory judgment in the circuit court naming as defendants the Meyerses, the Regnerys, and all former JWM shareholders. In his complaint, Alfred stated that he believed that the consent agreement granted him the authority to release the Meyerses from all of the claims being asserted by the Regnerys and requested that the court enter a judgment authorizing him to execute a release of the claims.

The declaratory judgment action was consolidated with the Regnerys' action and, subsequently, Alfred and the Regnerys filed motions for summary judgment on Alfred's complaint. At a hearing on the parties' motions, the trial court found that because the Regnerys were asserting the same claims that were asserted by Frederick, the court was required to grant Alfred's motion. In the written order denying the Regnerys' motion and granting Alfred's, the court stated that Alfred was the agent of the Regnerys for the purposes of settling the claims asserted by the Regnerys in their action against the Meyerses and that Alfred was authorized by the provisions of the agency agreement to execute and deliver a release of the Regnerys' claims against the Meyers.

■ In their appeal from the trial court's order, the Regnerys argue that the court erred when it denied their motion for summary judgment and entered judgment in favor of Alfred. While the denial of a motion for summary judgment ordinarily may not be appealed, such a denial is reviewable where the case is before this court on appeal from a final judgment and there has been no trial or evidentiary hearing. (*International Association of Machinists & Aerospace Workers, District Lodge No. 140 v. Chesire/A Xerox Co.* (1984), 125 Ill. App. 3d 350, 465 N.E.2d 981.) Thus, we may consider the question of whether the trial court erred in denying the Regnerys' motion for summary judgment.

■ Under section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005), a court may enter a summary judgment for a moving party where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The sole function of a court of appeal in reviewing the trial court's entry of a summary judgment is to determine whether the trial court correctly ruled that no genuine issue of material fact had been raised and, if no such issue was raised, then the reviewing court must determine whether judgment was correctly entered for the moving party as a matter of law. (*Newell v. Field Enterprises, Inc.* (1980), 91 Ill. App. 3d 735, 415 N.E.2d 434; *Coomer v. Chicago & North Western Transportation Co.* (1980), 91 Ill. App. 3d 17, 414 N.E.2d 865.) We find that the question of whether Alfred is authorized to release the Regnerys' claims against the Meyerses is a proper one for summary judgment.

■ The nature and extent of an agency is generally a question of fact to be decided by the trier of fact. (*Wargel v. First National Bank* (1984), 121 Ill. App. 3d 730, 460 N.E.2d 331; *St. Ann's Home for the Aged v. Daniels* (1981), 95 Ill. App. 3d 576, 420 N.E.2d 478.) However, where the agency authority has been conferred in writing and there is no dispute concerning the parties' relationship, the question becomes one of law. *Wargel*, 121 Ill. App. 3d at 736; 3 Am. Jur. 2d *Agency* §373 (1986).

■ In the present case, there is no dispute concerning Alfred's appointment as agent on behalf of the JWM shareholders. The only question raised concerns the extent of Alfred's authority under that appointment, *i.e.*, whether Alfred was authorized by the agency agreement to release the claims asserted by the Regnerys against the Meyerses. The Meyerses argued and the trial court found that Alfred was authorized to release the Regnerys' claims because they were the

same as the claims asserted by Frederick. We find nothing in the record that supports the trial court's conclusion.

The only references in the record to Frederick's claims, apart from those made in the agency agreement itself, are contained in the covenant not to sue; the consent agreement approved by the shareholders; the minutes of the October 24, 1986, board of directors meeting; and a summary sent to the shareholders prior to the acquisition and merger. These references state only that Frederick may have certain claims against JWM in connection with past sales of stock and in connection with the Kenner acquisition. Nothing in these references provides any indication of what precisely Frederick's claims were, and we find that, in the absence of any such indications, the trial court erred in concluding that Frederick's claims and those of the Regnerys were the same.

Our decision does not rest solely on our finding that the trial court lacked support for its conclusion that the claims were the same. We also find that the agency agreement does not authorize Alfred's release of the Regnerys' claims against the Meyerses.

The agency agreement provides that Alfred has the authority to act on behalf of the shareholders in

> "all matters pertaining to the Acquisition Agreement, the Agreement of Merger, the Escrow Agreement, [the agency] agreement and the consummation of the transactions contemplated under each of said Agreements including, without limit, the authority: (a) to pay, defend, compromise, settle or otherwise dispose of any liability, cost or expense arising with respect to the Acquisition Agreement, Agreement of Merger, Escrow Agreement, [the agency] agreement and the consummation of the transactions contemplated under each of said Agreements, including without limitation *** any claim asserted against the Stockholders in connection with the sale of company stock, including, without limitation, the claims of Frederick Regnery."

Alfred contends that the agency agreement authorizes him to release the Regnerys' claims against the Meyerses because they are "claims asserted against the stockholders in connection with the sale of company stock." We cannot agree.

■ Where an agent is granted the authority to compromise or settle claims, in exercising that authority, he must pursue strictly the terms and conditions of his mandate. (2A C.J.S. *Agency* §234 (1972).) A strict reading of the terms and conditions of the agency agreement provides no authority for Alfred's release of the Regnerys' claims.

■ The agency agreement clearly restricts Alfred's authority to the disposal or settlement of only those claims "pertaining to the Acquisition agreement, the Agreement of Merger, the Escrow Agreement, the [agency] agreement and the consummation of the transactions contemplated under each" of the agreements. The Regnerys' claims against the Meyerses do not fall within this class of claims.

The Regnerys' complaint, entitled "Complaint Against Trustee and for Accounting," alleges that trustee David Meyers and his brother, Frederick Meyers, conspired to commit a common law breach of trust and a breach of the express terms of the 1981 voting trust agreement. These allegations bear no relation to the acquisition, merger, escrow, or agency agreements or the transactions contemplated thereunder.

Although it is true that the Meyerses were shareholders of JWM, and the agency agreement states that Alfred may dispose of claims asserted against the shareholders in connection with the sale of stock, we do not believe that the agreement can be read as authorizing Alfred to release the Regnerys' claims against the Meyerses. Rather, we find that the agreement authorizes Alfred to deal with claims against shareholders only when those claims have arisen in connection with the acquisition, merger, escrow, and agency agreements or the transactions thereunder.

As we stated above, the Regnerys' claims do not arise under the agreements or transactions covered by the agency agreement, but under the voting trust agreement executed five years earlier in August 1981. Accordingly, we conclude that the trial court erred in finding that the agency agreement authorized Alfred to release the Regnerys' claims against the Meyerses.

■ In deciding that the agency agreement did not provide Alfred with the authority to release the Regnerys' claims against the Meyerses, we are also mindful of the conflict of interest that would arise for Alfred if we were to rule otherwise. The Meyerses have made a demand on Alfred, as their agent, to defend the Regnerys' claims against them. In response to this demand, Alfred seeks to act as the Regnerys' agent and execute a release of their claims against the Meyerses. We believe this would be improper.

■ It is well settled in agency law that the relationship between a principal and agent is one of trust and confidence and that the agent owes a duty of loyalty to his principal. (*Estergard, Eberhardt & Ackerman, Inc. v. Carragher* (1982), 105 Ill. App. 3d 816, 434 N.E.2d 1185; *Willis v. Ruthrauff & Ryan, Inc.* (1957), 14 Ill. App. 2d 259, 144 N.E.2d 636; 3 Am. Jur. 2d *Agency* §210 (1986); 3 C.J.S. *Agency*

§271 (1973).) Where, as in the present case, a conflict arises among joint principals concerning how an agent should act, a breach of this duty of loyalty may occur.

The conflicting interests of two principles can place a strain upon the integrity of the agent, who might be inclined to favor one over the other or to exercise his discretion in accordance with the wishes of one. (*Manchester Fire Assurance Co. v. Insurance Co.* (1900), 91 Ill. App. 609.) Accordingly, because a principal is entitled to the unbiased judgment of his agent, an agent should not act for two parties whose interests conflict. *Manchester Fire Assurance*, 91 Ill. App. at 613; *Bunn v. Keach* (1905), 214 Ill. 259, 73 N.E. 419; 3 Am. Jur. 2d *Agency* §§241, 242.

In the present case, Alfred seeks to act as the Regnerys' agent and release their claims against the Meyerses. Such action would be in accordance with the Meyerses' demand on him, but contrary to the wishes of the Regnerys. In light of the conflict between the Meyerses and the Regnerys, an attempt by Alfred to act for both the Meyerses and the Regnerys in this matter would breach the duty of loyalty he owes the Regnerys as their agent.

In conclusion, we find that the trial court erred in finding that the claims asserted by the Regnerys were the same as those asserted by Frederick. We also find that because the claims asserted by the Regnerys were not covered by the agency agreement and because Alfred could not act on behalf of both the Meyerses and the Regnerys in this matter, the court erred in denying the Regnerys' motion for summary judgment and entering summary judgment for Alfred.

For the foregoing reasons, the trial court's judgment in favor of Alfred is reversed. The cause is remanded for entry of judgment for the Regnerys on Alfred's declaratory judgment complaint and for further proceedings in the Regnerys' breach of trust action.

Judgment reversed and remanded.

CERDA, P.J., and RIZZI, J., concur.