DAVID R. MEYERS *et al.*, Plaintiffs-Appellants, v. HENRY J. UNDERWOOD, JR., *et al.*, Defendants-Appellees.—DAVID R. MEYERS *et al.*, Plaintiffs-Appellees, v. VEDDER, PRICE, KAUFMAN AND KAMMHOLZ, Defendant-Appellant.

First District (2nd Division)   Nos. 1—98—4013, 1—99—0504 cons.

Opinion filed June 27, 2000.—Rehearing denied November 9, 2000.

Peter C. Woodford and Christopher E. Paetsch, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for David R. Meyers and Frederick C. Meyers.

Matthew J. Gehringer and Melisa G. Thompson, both of Cahill, Christian & Kunkle, Ltd., of Chicago, for appellant Vedder, Price, Kaufman & Kammholz.

Michael J. Flaherty and Richard J. Jacobson, both of Flaherty & Jacobson, P.C., of Chicago, for appellees Henry J. Underwood, Jr., and Defrees & Fiske.

JUSTICE GORDON delivered the opinion of the court:

In the first of these two consolidated legal malpractice cases, plaintiffs David R. Meyers and Frederick C. Meyers (the Meyerses) appeal from orders of the Cook County circuit court granting summary judgment to defendants Henry J. Underwood, Jr., and Defrees & Fiske and denying the Meyerses' motion to reconsider. In the second case, defendant Vedder, Price, Kaufman & Kammholz (Vedder) appeals from a Cook County circuit court order denying its motion to dismiss the Meyerses' complaint. The Vedder case is being appealed pursuant to Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)) upon submission by the trial court of two certified questions.[1] For the reasons set forth below, we affirm the granting of summary judgment in favor of Underwood and Defrees. In the Vedder appeal, we answer the first of the two certified questions in the affirmative as to section 13—214.3 of the

---

[1]The full text of these certified questions is set forth in the discussion portion of the Vedder appeal below.

Code of Civil Procedure (735 ILCS 5/13—214.3 (West 1992)), and we therefore reverse the denial of Vedder's motion to dismiss the Meyerses' complaint.

## BACKGROUND

The first of these two consolidated actions, both of which are for legal malpractice, was filed on October 27, 1995. In that action, plaintiffs David R. Meyers and Frederick C. Meyers brought a complaint against defendants Defrees & Fiske, a Chicago law partnership, and Henry J. Underwood, Jr., an attorney with Defrees. Defendants (hereinafter referred to collectively as Defrees) had been retained by the board of Joanna Western Mills (Joanna) allegedly to assist in the sale of Joanna, a closely held, family-owned company in Chicago that manufactured interior window coverings. Count I of the complaint sounds in negligence and count II sounds in tort. According to the complaint, defendants failed to properly draft sale documents and incorrectly advised the Meyerses with respect to the 1986 sale of Joanna to Kenner & Company (Kenner). As a result, a judgment of $1,626,555 was entered (on September 7, 1994) against the Meyerses in a 1987 shareholders suit arising from the 1983 sale of 600 shares of Joanna stock to the Meyerses. That judgment amount was subsequently increased to $4,359,900 as a result of an appellate court opinion issued April 22, 1997, in *Regnery v. Meyers,* 287 Ill. App. 3d 354, 679 N.E.2d 74 (1997) (hereinafter *Regnery II*). In the instant suit, which was filed prior to the decision in *Regnery II*, the Meyerses, two brothers who were officers and directors of Joanna, sought damages in excess of $2 million.

The second of these consolidated actions was filed by the Meyerses against defendant Vedder, Price, Kaufman and Kammholz, a Chicago law firm that was Joanna's corporate counsel from 1981 through the fall of 1986. The complaint was filed on March 17, 1998, but because of a tolling agreement executed by the Meyerses and Vedder on December 16, 1994, that earlier date (December 16, 1994) is the effective filing date. The complaint is brought against Vedder in connection with a 1981 voting trust and the previously mentioned 1983 sale of 600 shares of Joanna stock to the Meyerses for $500 per share. The complaint, consisting of four counts, alleges that Vedder failed to draft properly the voting trust and failed to give proper advice as to the trust and the Meyerses' 1983 purchase of Joanna stock. Counts I and III sound in negligence, and counts II and IV allege breach of contract. The Meyerses claim damages in excess of $5,289,324.01, which is the amount they paid (on January 20, 1998) in satisfaction of the judgment entered in the previously mentioned shareholder litigation. That

amount represents the $4,359,900 judgment resulting from the decision in *Regnery II* plus postjudgment interest and costs.

These two consolidated cases arise from the same facts, which are largely undisputed.[2] In 1981 Joanna was experiencing severe financial losses. Following a number of meetings in mid-August to discuss the situation, Joanna president William Regnery resigned. Shortly thereafter, Frederick Meyers was named president of Joanna and David Meyers was named vice president. The August 1981 meetings also led to creation of a voting trust agreement among certain of Joanna's shareholders. The agreement was drafted by Vedder attorney Robert J. Stucker[3] and other Vedder attorneys working under his supervision. Frederick Regnery, Henry Regnery and David Meyers were named the trustees of the voting trust, which included 3,745 shares, or slightly more than half the outstanding and issued shares of Joanna stock. Those shares were deposited into the trust by Verla Regnery, one of Joanna's majority shareholders. *Regnery II*, 287 Ill. App. 3d at 357, 679 N.E.2d at 76.

In 1983, Stucker suggested to Fred Meyers that it would be appropriate for Fred and his brother, David, to be allowed to purchase stock in Joanna for $500 per share, a price that Stucker said was consistent with recent sale and purchase transactions among shareholders. Stucker was directed by Joanna to advise the company on the structure and manner in which the proposed sale of shares to the Meyerses would be presented, approved and implemented, and to draft the necessary documentation. On September 13, 1983, Joanna's board authorized the issuance of 600 shares of stock to be sold to the Meyerses at $500 per share, and on September 26, 1983, the sale was approved by the stockholders. All of the shares in the voting trust were counted in favor of the sale, even though the voting trust proxy was executed by only two of the trustees, David Meyers and Henry Regnery. Frederick Regnery, the third trustee, did not approve the sale and did not execute the proxy. Stucker and other Vedder attorneys drafted all of the documentation used to propose and approve the sale of shares to the Meyerses.

According to the Meyerses, in 1986 negotiations began for the sale of Joanna. The Meyerses allege that in March or April of 1986, Defrees was retained as special counsel to Joanna's board to assist in the sale. Separate proposals for the purchase of Joanna's stock were submitted by Kenner & Company and by a group that included Fred-

---

[2]Where the facts are disputed, it is so indicated.

[3]On or about June 8, 1982, Stucker was named secretary of Joanna, a position he held through the fall of 1986.

erick Regnery, the voting trust trustee who did not approve the 1983 sale of shares to the Meyerses. On September 3, 1986, Joanna chairman Henry Regnery sent a letter to Joanna stockholders informing them that, on August 21, 1986, Joanna had entered into an acquisition agreement calling for the acquisition of all of Joanna's stock by Kenner for $58 million in cash. The letter stated that the stockholders would receive $7,766 for each share, of which $7,097 was to be paid to the stockholders at closing and $669.50 was to be held in escrow to pay undisclosed company obligations. Attached to the letter were transactional documents prepared by Defrees, including an agreement of merger, an escrow agreement, an agency agreement, and a consent agreement. On September 12, 1986, the majority of Joanna's shareholders executed the consent agreement, thereby approving the Kenner acquisition and (in accordance with the agency agreement) designating Alfred Regnery as the shareholders' agent in connection with the acquisition. The sale closed in October 1986.

In July 1987, certain former Joanna shareholders, including several Regnery family members (the Regnerys), sued the Meyerses, alleging that the 1983 sale of 600 Joanna shares to David and Fred Meyers constituted a common law breach of trust and a breach of the express terms of the 1981 voting trust agreement. The Meyerses contacted Alfred Regnery, the shareholders' agent, and requested that he release them from the shareholders' claims against them pursuant to the agency and consent agreements prepared by Defrees. *Regnery II*, 287 Ill. App. 3d at 359, 679 N.E.2d at 77. Alfred subsequently filed a declaratory judgment action in Cook County circuit court requesting authorization to release the Meyerses from the shareholders' claims in the 1987 suit. *Regnery II*, 287 Ill. App. 3d at 359, 679 N.E.2d at 77. The shareholders' suit and Alfred's complaint were consolidated, and both Alfred and the shareholder plaintiffs filed cross-motions for summary judgment. The trial court granted Alfred's motion, thus allowing him to release the Meyerses from the claims. On appeal, that decision was reversed. The appellate court found that the agency agreement did not authorize Alfred to release the Meyerses from the shareholders' claims, and it remanded the case for "entry of judgment for the Regnerys on Alfred's declaratory judgment complaint and for further proceedings in the Regnerys' breach of trust action [against the Meyerses]." *Regnery v. Regnery*, 211 Ill. App. 3d 607, 616, 570 N.E.2d 557, 563 (1991) (hereinafter *Regnery I*).

In its 1994 final judgment order in the 1987 shareholders' litigation (following a bench trial), the trial court found that the $500-per-share price the Meyerses paid for the stock in 1983 was "substantially below its fair value" and that at the time they acquired the stock the

Meyerses knew it was worth substantially more. The court found that "[t]he Meyers[es] did not disclose to the Joanna board of directors or the stockholders the full compensation they had been receiving[,] and the sale was represented to the stockholders as a sale at fair market value. The Meyers[es] also did not disclose to the stockholders the projected income for Joanna in 1983." The trial court further found that David Meyerses breached his fiduciary duty to Verla Regnery, a depositor in the voting trust, "by using his position as Trustee of the Voting Trust to effectuate the issuance of Joanna stock to himself and his brother at a price far below its actual value." David Meyers also was found to have breached his duty to Verla Regnery "when he failed to give her notice of his intended action and when he caused the Voting Trust to vote in favor of the sale to himself and his brother without a unanimous decision by the Trustees." The court also found that, since the voting trust was the majority stockholder in Joanna, David had breached the "separate and independent duties a majority stockholder owes to the minority stockholders." In addition, the court found that Fred Meyers induced his brother to breach his fiduciary duties, participated in those breaches, and knowingly accepted the benefits from them. The trial court found that the Meyerses received $4,359,900 in profit from those breaches, plus $195,000 in dividends from September 1983 through October 1986 (when Joanna was sold) on the 600 shares of Joanna stock. Judgment was entered against the Meyerses in the amount of $1,626,555, or 35.71% of the amounts obtained by them. The shareholder plaintiffs were 35.71% stockholders in Joanna at the time of the breach.

On appeal, the plaintiff shareholders argued that the trial court erred when it allowed the Meyerses to retain the majority of the profits they obtained through their breach of fiduciary duties. *Regnery II*, 287 Ill. App. 3d at 359, 679 N.E.2d at 77. The Meyerses cross-appealed the trial court's findings relating to liability, including the findings as to breach of fiduciary duties.

The appellate court upheld the trial court's findings as to the Meyerses' misconduct but found that "the trial court erred in allowing [the Meyerses] to retain all but 35.71% of the profits and dividends they received as a result of the breach." *Regnery II*, 287 Ill. App. 3d at 365, 679 N.E.2d at 81. The circuit court was instructed "to disgorge [the Meyerses] of all profits and dividends obtained during the period September 1983 through October 1986, on the 600 shares of Joanna stock in question *** and award all plaintiffs, both those who are now parties to this action and those who choose to intervene, their *pro rata* share of such profits and dividends." *Regnery II*, 287 Ill. App. 3d at 366, 679 N.E.2d at 81. On October 1, 1997, the Illinois Supreme Court

denied leave to appeal. *Regnery v. Meyers*, 174 Ill. 2d 594, 686 N.E.2d 1173 (1997). On January 20, 1998, the Meyerses satisfied the judgment against them by paying the Joanna shareholders' representative $5,289,324.01, which represents the judgment of the trial and appellate courts, plus postjudgment interest and costs.

## A. The Defrees Lawsuit

As previously noted, the Meyerses filed a suit for legal malpractice against Defrees on October 27, 1995, in connection with the 1986 sale of Joanna to Kenner. According to the complaint, Defrees negligently drafted documents accompanying the sale, including a consent agreement and an agency agreement, in such a way that they failed to release the Meyerses from shareholder claims arising from the Meyerses' 1983 purchase of Joanna stock. The complaint also alleges that defendants improperly and incorrectly advised the Meyerses that all potential shareholder claims against them would be resolved and that they could consent to the Kenner sale without fear of suit. Attached to the complaint is a copy of a letter (dated September 3, 1986) from Joanna chairman Henry Regnery to the stockholders regarding the proposed sale of Joanna's stock to Kenner. Also attached to the complaint are copies of documents prepared by defendants that accompanied the letter, including a summary outlining the main features of the Kenner transaction, an agreement of merger, an escrow agreement, an agency agreement, and a shareholder consent agreement. Defendants moved to dismiss the complaint, but the motion was denied. They then filed their answer and affirmative defenses.

On November 7, 1997, defendants filed a motion for summary judgment claiming that the Meyerses' complaint was barred by the two-year statute of limitations and the six-year statute of repose included in section 13—214.3 of the Code of Civil Procedure (735 ILCS 5/13—214.3 (West 1992)). Defendants also alleged that the Meyerses had come to court with unclean hands and that their complaint was barred by Illinois public policy stating that a court will not aid a party whose cause of action is founded on illegal, immoral or fraudulent acts to relieve himself of the consequences of those acts. In making that claim, defendants pointed to the previously mentioned final judgment order in the 1987 breach-of-trust suit brought by former Joanna shareholders against the Meyerses. In that order (dated September 7, 1994), which is attached as an exhibit to defendants' motion, the trial court found that David Meyers breached fiduciary duties in connection with the Meyerses' 1983 purchase of Joanna stock and that Fred Meyers induced those breaches, participated in them and knowingly accepted their benefits. Also attached to the sum-

mary judgment motion is a copy of the 1997 appellate court opinion affirming those findings. *Regnery II*, 287 Ill. App. 3d 354, 679 N.E.2d 74. In addition, a copy of *Regnery I*, 211 Ill. App. 3d 607, 570 N.E.2d 557, is submitted with the motion.

On June 12, 1998, the trial court granted summary judgment for defendants, holding that the Meyerses' suit was barred by the six-year statute of repose found in section 13—214.3 of the Code of Civil Procedure (735 ILCS 5/13—214.3(c) (West 1992)). The court found that, since the alleged malpractice took place in 1986 (when the consent and agency agreements were drafted), the statute of repose barred any actions filed after 1992. The Meyerses' complaint here was not filed until October 27, 1995. On September 30, 1998, the trial court denied the Meyerses' motion to reconsider.

## B. The Vedder Lawsuit

As previously noted, the Meyerses' legal malpractice complaint against Vedder was filed on March 17, 1998, but because of a tolling agreement between the parties, the effective filing date was December 16, 1994. Counts I and II of the complaint, which allege negligence and breach of contract, respectively, focus on the 1981 voting trust agreement. According to those counts, Vedder and Stucker failed to properly draft the voting trust to reflect clearly (1) when a unanimous vote of its trustees was required to approve a sale of Joanna stock, (2) when the trustees were required to give the beneficiaries advance notice of their intended action, and (3) when and under what circumstances a trustee could vote on a matter in which he had a personal interest. Counts I and II also allege that Vedder and Stucker failed to advise the voting trust beneficiaries and trustees as to those and other related matters. Counts III and IV also allege negligence and breach of contract, but they focus on the 1983 sale of 600 shares of Joanna stock to the Meyerses. According to those counts, Vedder and Stucker failed to give proper advice regarding the appropriate procedures for valuing the 600 shares sold to the Meyerses in 1983. Counts III and IV also allege that Vedder and Stucker failed to give proper advice (1) that the voting trust shares could not be counted in favor of the sale to the Meyerses unless the trustees voted unanimously in favor of the sale, (2) that Joanna's board could have legally approved the 1983 sale without the consent of Joanna's shareholders, (3) that the sale of the shares to the Meyerses, as structured by Vedder and Stucker, was subject to a shareholder challenge on the ground that it was unfair to Joanna's minority shareholders and the voting trust beneficiaries, and (4) that the sale was subject to challenge on the basis that the voting trust trustees failed to give the beneficiaries proper advance notice of their intent to approve the sale.

Attached to the complaint is a copy of the 1981 trust agreement naming David Meyers, Frederick Regnery and Henry Regnery as voting trustees of the trust (which represented slightly more than half of Joanna's shares). Section 4 of the trust agreement, which lists powers and duties of the trustees, states in pertinent part:

"(5) *Disposition of Shares.* Before entering into any agreement for any disposition of any Shares of the Corporation by sale, merger, exchange or otherwise the Trustees shall notify the Holders of the Trust Certificates of their intended action.

\*\*\*

(7) *Operating Procedures and Interest of Trustees.* \*\*\* If the trustees at any time disagree as to any decision in which more than one Trustee is authorized to participate, the decision of the majority of the Trustees shall control, except that any decision of the Trustees regarding a sale of any of the Shares, a merger or consolidation, or a sale of a significant portion of the Corporation's assets, shall require a unanimous decision of the Trustees."

Other attachments to the complaint include: (1) the minutes of a September 13, 1983, board meeting where Joanna's board authorized the issuance of 600 shares to be purchased by the Meyerses for $500 per share, contingent upon stockholder approval of the sale; (2) the minutes of a September 26, 1983, shareholders meeting where the proposed sale to the Meyerses was approved by a vote of 98.8 percent of the shares represented at the meeting; and (3) a copy of a proxy executed on September 20, 1983, by David Meyers and Henry Regnery (as trustees of the voting trust) with the intent of approving the sale. That written proxy and the 3,745 shares it represented were counted at the September 26 shareholder meeting as having been voted in favor of the sale to the Meyerses. As previously noted, Frederick Regnery, the third trustee, did not approve the sale and did not execute the proxy.

On May 18, 1998, Vedder moved to dismiss the Meyerses' complaint pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)). As grounds for its motion, Vedder alleged that the Meyerses' complaint was time-barred under either section 13—205 of the Code of Civil Procedure (735 ILCS 5/13—205 (West 1992)), the five-year statute of limitations that governed legal malpractice claims prior to January 1, 1991, or under section 13—214.3 (735 ILCS 5/13—214.3 (West 1992)), the two-year statute of limitations for legal malpractice claims that includes a six-year statute of repose. Vedder also made essentially the same unclean hands argument that Defrees made in its summary judgment motion, claiming that the Meyerses are prohibited from asserting rights growing out of

already established wrongful conduct and are barred from obtaining relief from the consequences of that conduct. Among the exhibits attached to Vedder's memorandum in support of its motion are copies of the 1987 shareholder complaint against the Meyerses, the 1994 final judgment order in that case, and the 1997 appellate opinion (*Regnery II*, 287 Ill. App. 3d 354, 679 N.E.2d 74) affirming the 1994 findings as to the Meyerses' misconduct.

On December 15, 1998, the trial court denied the motion to dismiss. The court found that, under the six-year statute of repose, the "reasonable period" exception applied and further found that there was a jury question as to whether the Meyerses' claims were filed within a reasonable period. The court also rejected Vedder's public policy argument that the Meyerses' complaint was barred because of the judgment against them in the underlying shareholders' litigation. The court noted that the Meyerses' complaint alleged that Vedder initiated and participated in the misconduct for which the Meyerses were found liable.

## DISCUSSION

■ The standard of review is the same in each of these appeals. We review a trial court's ruling on a motion to dismiss *de novo*, and the same standard applies to a court's decision on a summary judgment motion. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383, 687 N.E.2d 1042, 1049 (1997); *Simon v. Wilson*, 291 Ill. App. 3d 495, 509, 684 N.E.2d 791, 800 (1997).

■ The central question in these appeals is whether the Meyerses' claims are barred by the six-year statute of repose for malpractice claims that went into effect January 1, 1991. That provision is included in section 13—214.3 of the Code of Civil Procedure (735 ILCS 5/13—214.3 (West 1992)), which provides:

"(b) An action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services *** must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought.

(c) Except as provided in subsection (d), an action described in subsection (b) may not be commenced in any event more than 6 years after the date on which the act or omission occurred.

* * *

(f) This Section applies to all causes of action accruing on or af-

ter its effective date [January 1, 1991]." 735 ILCS 5/13—214.3 (West 1992).[4]

■ Before addressing the applicability of the statute of repose, we must discuss when the Meyerses' claims accrued in the two actions. If they accrued before January 1, 1991, then the statute of repose does not apply, and their claims are governed by section 13—205 of the Code of Civil Procedure (735 ILCS 5/13—205 (West 1992)), the five-year general statute of limitations that applied to legal malpractice claims prior to 1991. *Garcia v. Pinto*, 258 Ill. App. 3d 22, 24, 629 N.E.2d 103, 104 (1993). However, it is essentially undisputed that the Meyerses' claims accrued after January 1, 1991. The six-year statute of repose thus applies in each case.

## A. The Defrees Appeal

The Meyerses argue on appeal that their claim was timely filed under either the "new" two-year statute of limitations or its accompanying six-year statute of repose. The Meyerses contend that their claim against Defrees did not accrue until September 7, 1994, the date of the final judgment against them in the underlying Joanna shareholders' litigation. The Meyerses note that they filed suit in October 1995, well within two years after the September 7, 1994, accrual date. They also argue that, contrary to the trial court's holding, their claim was filed within the reasonable period of time exception to the statute of repose. Alternatively, they contend that if their September 7, 1994, accrual date is not accepted, then there is a genuine issue of material fact as to the accrual date, and summary judgment thus was improperly granted.

According to the Meyerses, September 7, 1994, is the accrual date for their claims because it was on that date that the Meyerses were found liable for breaches of fiduciary duty and judgment was entered against them in the amount of $1,626,555. The Meyerses argue that, prior to that date, they had no actual damages attributable to defendants' negligence and therefore had no claim. See *Lucey v. Law Offices of Pretzel & Stouffer, Chtrd.*, 301 Ill. App. 3d 349, 353-55, 703 N.E.2d 473, 476-78 (1998) (actual damages are essential element in legal malpractice claim and are "entirely speculative" until judgment entered against former client or he is forced to settle). Thus the Meyerses argue that because their complaint against Defrees was filed on October 27, 1995, a little more than a year after September 7, 1994, it

[4]Section 13—214.3 was amended by Public Act 89—7 (Pub. Act 89—7, eff. March 9, 1995), but that statute was held unconstitutional in its entirety by the Illinois Supreme Court in *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 689 N.E.2d 1057 (1997).

was timely under the two-year statute of limitations in section 13—214.3(b). Defrees disagrees, contending that the Meyerses' claims accrued not in 1994 but on March 20, 1991, the date the appellate court in *Regnery I* reversed the trial court and allowed the underlying shareholders' suit to proceed against the Meyerses. According to Defrees, the Meyerses knew on March 20, 1991, that the documents drafted by Defrees would not release them from the shareholders' claims, and therefore the Meyerses' claims accrued on that day "when the[y] learned that the 'release documents' did not work." Thus Defrees contends that the Meyerses' claims were not timely under the two-year statute of limitations.

■ We need not resolve this dispute. Even if we were to grant that the accrual date was September 7, 1994, that still would leave unresolved the question of whether the Meyerses' claims against Defrees were barred by the six-year statute of repose, which as we have indicated is the overriding issue in these appeals. Accordingly, for purposes of our analysis, we will treat this case as though the Meyerses' claims accrued on September 7, 1994, although we note that we are not accepting that date in preference over the 1991 date.

The Meyerses argue that the trial court erred when it found that their suit against Defrees was barred by the six-year statute of repose. The court found that because the alleged malpractice by defendants took place in 1986, the statute of repose barred any actions filed after 1992.

■ The Meyerses contend that where a new statute or amendment shortens a limitations or repose period, a "reasonable period of time" is allowed after the amendment's effective date in which to file an action. *Goodman v. Harbor Market, Ltd.*, 278 Ill. App. 3d 684, 692, 663 N.E.2d 13, 19 (1995). Here the "new" statute shortened the limitations period for legal malpractice actions from five years to two and added a statute of repose where none existed previously. Hence, the "reasonable period" exception applies. Nevertheless, the trial court found that since the six-year repose period did not begin until September 1986, the date the consent and agency agreements at issue were drafted by defendants, the Meyerses' claims were not reposed until September 1992, which gave them 21 months after the statute's January 1, 1991, effective date in which to file their action. The trial court found that 21 months was "clearly a reasonable time." However, the Meyerses contend that the repose period can extend to the full six years after the effective date, or to January 1, 1997, and that because their complaint was filed on October 27, 1995, "well within that reasonable period of time," their claims should not have been barred. They also argue that under the trial court's analysis their claims were

reposed before they even accrued, which they claim is "fundamentally unjust." According to the Meyerses, their October 27, 1995, filing came within a reasonable period after their claims accrued and therefore the suit should not have been barred.

Defrees argues that 21 months was a reasonable period of time in which to file an action. Defrees also contends that, contrary to the Meyerses' argument that it was unfair to repose their claims before they accrued, such a result is "part of the very nature of statutes of repose, which serve to bar actions that have not yet been discovered." Thus they argue that the Meyerses' claims were barred by the statute of repose and summary judgment was properly granted on that basis. We agree.

The Meyerses rely principally upon *Goodman* in making their argument, but that case is of little help to them. In *Goodman*, the plaintiff filed a legal malpractice claim against his former attorneys in 1993, charging malpractice in connection with a promissory note executed by the plaintiff and his mother- and father-in-law in April 1985. The plaintiff's mother-in-law filed suit against him in January 1993 to enforce the note, and the plaintiff filed his third-party action against his former attorneys on November 8, 1993. The trial court granted the attorneys' motion to dismiss, finding that the plaintiff's complaint was time-barred by the six-year statute of repose for legal malpractice claims (735 ILCS 5/13—214.3(c) (West 1992)). On appeal, the decision was reversed. The appellate court noted that where an amendment shortens a statute of limitations or repose, it "will not be retroactively applied so as to terminate a cause of action unless the party has had a reasonable period of time after the amendment's effective date in which to file an action." *Goodman*, 278 Ill. App. 3d at 692, 663 N.E.2d at 19. Because the alleged malpractice in *Goodman* occurred in April 1985, the plaintiff's claim was reposed as of April 1991, or just three months after the "new" statute went into effect. The appellate court stated that three months was not a reasonable period within which to discover the injury and file suit and held that the plaintiff's action was timely filed. *Goodman*, 278 Ill. App. 3d at 695, 663 N.E.2d at 21. In reaching that conclusion, the court noted that "the reasonable period of time in which a plaintiff may bring suit for injuries sustained prior to the effective date of a statue of repose can never be more than the repose period itself, computed from the effective date of the statute." *Goodman*, 278 Ill. App. 3d at 695, 663 N.E.2d at 21. The court added that, "[a]pplying this rationale to the facts in this case, [the plaintiff's] action must be viewed as timely filed. [The plaintiff] both discovered his injury and filed suit within six years of the effective date of section 13—214.3." *Goodman*, 278 Ill. App. 3d at 695, 663 N.E.2d at 21.

From such language the Meyerses infer a "two-part test" for determining whether their claims were filed within a reasonable time. According to the Meyerses, the first part of this test focuses on the period between the accrual of the plaintiff's claim and the date he filed his action. Second, the plaintiff also must have filed suit within the repose period itself (here, six years), calculated from the effective date of the statute. The Meyerses thus argue that they satisfied both parts of this test. Their action was filed on October 27, 1995, less than two years after their claims accrued, and it was filed "well within" the six-year maximum extent of the repose period, or January 1, 1997.

The Meyerses' inference of and reliance upon this "test" is misplaced. Nowhere in *Goodman* do we find an explicit statement of this "two-part test." Moreover, undercutting the Meyerses' implied assertion that the "reasonable period" should be measured from the date of accrual, there is language in *Goodman*, including passages quoted by the Meyerses, clearly indicating that the reasonable period is measured from the statute's *effective date. Goodman*, 278 Ill. App. 3d at 692, 693, 695, 663 N.E.2d at 19, 20, 21 (party is given "reasonable period of time after the amendment's effective date in which to file an action," citing *Phillips Products Co. v. Industrial Comm'n*, 94 Ill. 2d 200, 203-04, 446 N.E.2d 234, 236 (1983); " 'reasonable time to which the plaintiffs here were entitled did not extend beyond that provided by the new repose period, computed from its effective date' " quoting *Mega v. Holy Cross Hospital*, 111 Ill. 2d 416, 422, 490 N.E.2d 665, 668 (1986); reasonable period in which plaintiff may bring suit "can never be more than the repose period itself, computed from the effective date of the statute," citing *Costello v. Unarco Industries, Inc.*, 111 Ill. 2d 476, 483, 490 N.E.2d 675, 678 (1986)). Other opinions have stated the same thing. *M.E.H. v. L.H.*, 177 Ill. 2d 207, 217, 685 N.E.2d 335, 340 (1997) ("Plaintiffs must proceed within a reasonable time following the effective date of the statute of repose"); *Moore v. Jackson Park Hospital*, 95 Ill. 2d 223, 233, 447 N.E.2d 408, 412 (1983) ("The period which is scrutinized *** for its reasonableness is that time between the statute's effective date and the date on which the preexisting cause of action would be barred under the new statute as applied"). The "reasonable period" thus is measured not from the accrual date but from the statute's effective date. There is no genuine issue of material fact as to that question.

As to the second part of the test, the *Goodman* court does note that the reasonable period "can never be more than the repose period itself." *Goodman*, 278 Ill. App. 3d at 695, 663 N.E.2d at 21, citing *Costello*, 111 Ill. 2d at 483, 490 N.E.2d at 678. However, that does not necessarily mean, as the Meyerses imply, that so long as the period

(measured from the statute's effective date) does not exceed that limit, it can be called reasonable. In *Kaplan v. Shure Brothers, Inc.*, 153 F.3d 413 (7th Cir. 1998), a legal malpractice complaint that was filed five years after section 13—214.3 went into effect was found barred by the six-year statute of repose. The alleged malpractice occurred in 1987, which meant that the plaintiff had two years after the statute's (January 1, 1991) effective date during which to discover his injury and file suit. The court termed such a period reasonable, and thus upheld the trial court's finding that the complaint, which was filed in 1996 (less than six years after the effective date), did not come within a reasonable time after the statute of repose went into effect. *Kaplan*, 153 F.3d at 423. Hence, a complaint may be barred by a statute of repose even though it is filed within the repose period as measured from the statute's effective date. See also *Serafin v. Seith*, 284 Ill. App. 3d 577, 672 N.E.2d 302 (1996) (legal malpractice complaint that was filed less than three years after section 13—214.3's effective date was found barred by six-year statute of repose).

In the instant case, the Meyerses had 21 months after the statute's effective date before the termination of the repose period, and the trial court found that was "clearly a reasonable time." A period even shorter than 21 months has also been found reasonable. In *Charles v. Meyer Medical Group, S.C.*, 96 Ill. App. 3d 275, 421 N.E.2d 334 (1981), which is cited in *Goodman*, the plaintiff had 14 months from the effective date of the amendment in which to file her action, and the court found that reasonable. Her suit was filed 19 months after the effective date, and the court found that to be "an unreasonable length of time." *Charles*, 96 Ill. App. 3d at 278, 421 N.E.2d at 336.

As noted above, the Meyerses also argue that it was "fundamentally unjust" for their claims to be barred before they even accrued. They contend that, under the analysis in *Lucey v. Law Offices of Pretzel & Stouffer, Chtrd.*, 301 Ill. App. 3d 349, 703 N.E.2d 473 (1998), their claims could not have accrued prior to September 7, 1994, the date of the final judgment order in the underlying shareholders' litigation. The Meyerses thus maintain that any action they might have filed before then would have been dismissed as unripe. They contend that the trial court's determination that it was "reasonable" to require them to discover and file their claims by 1992, two years before those claims existed, was "without a legal or logical basis." However, Defrees contends that such a situation is not unusual where statutes of repose are applied. According to Defrees, "[s]tatutes of repose simply presume that causes of action may be barred before they accrue." We agree.

Statutes of repose generally operate to curtail the "long tail" of li-

ability that results from the discovery rule, under which a cause of action does not accrue until the plaintiff knows or reasonably should know of his wrongfully caused injury. *Anderson v. Wagner*, 79 Ill. 2d 295, 305, 312, 402 N.E.2d 560, 564, 568 (1979). Where a statute of limitations such as section 13—214.3(b) incorporates the discovery rule, the limitations period is not triggered until the injury is discovered. *Garcia v. Pinto*, 258 Ill. App. 3d 22, 24, 629 N.E.2d 103, 104 (1993). Without a statute of repose, such a statute of limitations would be essentially open-ended, or "a limitations period without a limit." *Goodman*, 278 Ill. App. 3d at 691, 663 N.E.2d at 19. Hence:

> "The period of repose gives effect to a policy different from that advanced by a period of limitations; the purpose of a statute of repose is to impose a cap on the applicability of the discovery rule so that the outer limit terminates the possibility of liability after a definite period of time, *regardless of a potential plaintiff's lack of knowledge of his cause of action.* [Citations.] *** The fact that a repose provision may, in a particular instance, bar an action before it is discovered is an accidental rather than necessary consequence." (Emphasis added.) *Serafin*, 284 Ill. App. 3d at 588, 672 N.E.2d at 310, citing *Mega v. Holy Cross Hospital*, 111 Ill. 2d 416, 424, 490 N.E.2d 665, 669 (1986).

Thus it is not "fundamentally unjust" that the statute of repose here would bar the Meyerses' claims before they accrued. The supreme court has held that such a result presents no due process violation, even though reposing a claim before it is discovered might seem "harsh and unfair." *Anderson*, 79 Ill. 2d at 312, 402 N.E.2d at 568.

Moreover, in point of fact there is a way to prevent loss of the entire action, at least in cases such as this, in that there was another option open to the Meyerses. They could have brought a third-party action. See *Lucey v. Law Offices of Pretzel & Stouffer, Chartered*, 301 Ill. App. 3d 349, 362-64, 703 N.E.2d 473, 482-84 (1998). In *Lucey*, the court noted that an appropriate course of action to take in order to avoid the possible harshness of the statute of repose is the filing of a third-party action before the repose period terminates. Here, in the underlying shareholders' litigation, the Meyerses were sued in 1987 for breach of trust allegedly resulting from the alleged legal malpractice that is the subject of the appeals at bar. Under section 2—406 of the Code of Civil Procedure (735 ILCS 5/2—406(b) (West 1992)), the Meyerses could have brought a third-party action against anyone "who is or may be liable" to them as a result of the shareholders' claims against them in the 1987 suit, regardless of whether actual damages in that suit were still pending. *Lucey*, 301 Ill. App. 3d at 362-64, 703 N.E.2d at 482-84. Further, the Meyerses were not unaware of the

third-party option. They filed a third-party complaint against Frederick Regnery in the underlying 1987 shareholders' suit. *Regnery I*, 211 Ill. App. 3d at 612, 570 N.E.2d at 560. Thus by use of a third-party action, it was possible for the Meyerses to have acted within a reasonable time against Defrees.[5]

## B. The Vedder Appeal

As noted, the Vedder appeal comes under Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)), with two questions certified by the trial court. Those questions are as follows:

"I. Whether 735 ILCS 5/13—214.3, or its predecessor, 735 ILCS 5/13—205, or neither of them, bars this cause of action where: (i) the alleged acts or omissions of the defendant attorneys took place in 1981 and 1983; (ii) the plaintiffs were sued in the underlying action in 1987, allegedly as a result of the attorneys' acts or omissions; (iii) the statute of repose became effective on January 1, 1991; (iv) judgment was entered against the plaintiffs in the underlying action on September 7, 1994; and (v) plaintiffs effectively filed their legal malpractice action on December 16, 1994.

II. Whether plaintiffs' conduct, as found by the trial court in the underlying action, bars plaintiffs from pursuing a legal malpractice claim under Illinois law against the defendant law firm, taking into account plaintiffs' allegations regarding defendant's involvement in the conduct and plaintiffs' alleged reliance on defendant's advice in undertaking the conduct."

Thus the issues presented in this action are substantially interrelated with the issues presented in the first of these two consolidated actions, the Defrees case. However, unlike the Defrees appeal, in this case, as set forth in the certified questions presented, the alleged malpractice took place in 1981 and 1983. Hence, if the six-year statute of repose were applied rigidly to the Meyerses' claims against Vedder, they would be reposed (in 1987 or 1989) before the 1991 statute went into effect. But, as previously noted, where (as here) an amendment shortens a statute of limitations or repose, it "will not be retroactively applied so as to terminate a cause of action unless the party has had a reasonable period of time after the amendment's effective date in which to file an action." *Goodman*, 278 Ill. App. 3d at 692, 663 N.E.2d at 19.

---

[5]We note that in making this observation we are not suggesting that the Meyerses should have been or were *required* to file such a third-party action. We mention the third-party alternative only in the context of the Meyerses' assertion that any action they might have filed prior to September 7, 1994, "would have been dismissed as unripe." Clearly that is not the case.

■ Nevertheless, Vedder argues on appeal that the reasonable period exception does not apply to the Meyerses' claims. According to Vedder, Illinois courts have applied that exception only to causes of action where the injuries occurred prior to the effective date of the statute, but were not discovered until after the effective date. Vedder asserts that because the Meyerses incurred no actionable damages until the (September 7) 1994 judgment against them, they were not injured until then. Thus since their injuries came after the statute's (January 1, 1991) effective date, the reasonable period exception does not apply. The Meyerses contend that, under Vedder's interpretation, only plaintiffs who suffered actionable damages prior to the statute's effective date would be entitled to the reasonable period exception. However, the Meyerses argue that the reasonable period exception applies to plaintiffs who were injured before the effective date of the statute but whose inchoate claims did not accrue until afterwards, perhaps because they were not discovered or because actual damages were not yet incurred.

Vedder points to *Lucey v. Law Offices of Pretzel & Stouffer, Chtrd.*, 301 Ill. App. 3d 349, 703 N.E.2d 473 (1998), which was briefly discussed earlier. *Lucey* held that "[w]here the mere possibility of harm exists or damages are otherwise speculative, actual damages are absent and no cause of action for malpractice yet exists." *Lucey*, 301 Ill. App. 3d at 353, 703 N.E.2d at 476-77. Vedder contends that under *Lucey*, the Meyerses did not suffer any injury (or actual damages) in 1981 or 1983, the dates of Vedder's alleged malpractice, and those dates therefore cannot be considered the dates of injury. Accordingly, Vedder maintains that the Meyerses did not suffer injury prior to January 1, 1991, and the reasonable period exception does not apply. We disagree. Vedder's argument appears to conflate the concepts of injury and accrual (or actionable damages), which are not necessarily identical. *Cf. Highland v. Bracken*, 202 Ill. App. 3d 625, 629, 560 N.E.2d 406, 409 (1990) (noting that date of injury in third-party action for contribution is not necessarily the same as date of accrual). The difficulty with Vedder's argument is that under *Lucey*, a case upon which Vedder relies, actual damages and accrual are essentially identical. One of the major points in *Lucey* is that a legal malpractice claim does not accrue until a plaintiff both discovers his injury *and incurs damages. Lucey*, 301 Ill. App. 3d at 353, 703 N.E.2d at 477. If, as Vedder implicitly argues, the Meyerses suffered no injury until they incurred actual damages (through entry of a judgment against them), then that would mean the reasonable period exception would apply only to claims that accrue prior to the effective date of the statute. However, the relevant case law indicates otherwise. In a special concur-

ring opinion in *Moore v. Jackson Park Hospital*, 95 Ill. 2d 223, 447 N.E.2d 408 (1983), three supreme court justices recognized that the reasonable period exception should apply to "inchoate" causes of action accruing "after the effective date of the amendment" just as it applies to "vested" claims that accrue before that date. *Moore*, 95 Ill. 2d at 241-42, 447 N.E.2d at 416-17. Further, that portion of the concurring opinion was cited favorably in *Goodman*'s discussion of the reasonable period exception. *Goodman*, 278 Ill. App. 3d at 692, 663 N.E.2d at 19.

Vedder also relies upon *Serafin v. Seith*, 284 Ill. App. 3d 577, 672 N.E.2d 302 (1996), where the court applied the (section 13—214.3(c)) six-year statute of repose. However, nowhere in *Serafin* is there a distinction made between time of injury and time of accrual, nor is there any indication that the decision was premised upon that issue. Indeed, the reasonable period exception itself is barely mentioned, and then only in the context of upholding the constitutionality of section 13—214.3. *Serafin*, 284 Ill. App. 3d at 588, 672·N.E.2d at 310-11. Vedder has failed to direct our attention to anything in *Serafin* or elsewhere that is sufficient to support its conclusion that "the repose statute bars actions based upon pre-statute negligence causing post-statute injury." Without more, we decline to draw that inference and thus affirm the trial court's conclusion that the reasonable period exception applied here.

■ Vedder argues that, even if the reasonable period exception does apply, the trial court mistakenly held that the exception was satisfied because the Meyerses' complaint was filed just a few months after the September 1994 judgment against them. Vedder contends that, "[u]nder Illinois law, the time period to be examined for reasonableness is the period between the effective date of the statute and the time the complaint was filed, not the time period between the date the plaintiff discovers his injury and the date the complaint is filed." In response, the Meyerses contend that the trial court correctly applied the (previously discussed) two-part test drawn from *Goodman*, the first part of which focuses on the time elapsed between accrual of the plaintiff's claim and the time when the complaint was filed. Thus the Meyerses argue that their complaint was filed in a timely manner "once their claims accrued." As noted above, we find no support in *Goodman* for the Meyerses' position as to that test, and we agree with Vedder that the "reasonable period" is measured not from the accrual date but from the statute's effective date. See *Moore*, 95 Ill. 2d at 233, 447 N.E.2d at 412 (noting that period that is scrutinized for reasonableness "is that time between the statute's effective date and the date on which the preexisting cause of action would be barred

under the new statute as applied"). The Meyerses also contend that the trial court correctly applied the second part of the test when it found that the Meyerses' complaint was filed well within the full six-year repose period as measured from the statute's effective date. Vedder argues in response that the full six-year repose period (as measured from the statute's effective date) does not necessarily define a reasonable period. *Cf. M.E.H.*, 177 Ill. 2d at 217, 685 N.E.2d at 340 (noting that "[t]here is no fixed rule for determining what constitutes a reasonable time" and that such a determination "turns on the particular facts and circumstances *** in each case"). Vedder notes that in other cases complaints have been barred by statutes of repose even though they were filed within the repose period as measured from the statute's effective date. See, *e.g., Kaplan v. Shure Brothers, Inc.*, 153 F.3d 413 (7th Cir. 1998). Here, too, we essentially agree with Vedder's position on this issue. Although the reasonable period (computed from the statute's effective date) "can never be more than the repose period itself" (*Goodman*, 278 Ill. App. 3d at 695, 663 N.E.2d at 21), that does not necessarily mean that so long as the period does not exceed that limit, it can be called reasonable.

■ Vedder next contends that the nearly four-year period that elapsed from the statute's effective date (January 1, 1991) to the time when the Meyerses filed their complaint (December 16, 1994) is too long to be considered reasonable and the Meyerses' claim thus is barred by the statute of repose.

As noted, in this case the alleged malpractice occurred in 1981 (the voting trust) and 1983 (the sale of Joanna shares to the Meyerses). If the six-year statute of repose were applied without any exception, the Meyerses' claims here would have been terminated in 1987 and 1989. Thus the claims would have been instantaneously barred when the new statute went into effect on January 1, 1991. The situation in the Defrees case of course was different. There, because the alleged malpractice took place in September 1986 (the drafting of the agency and consent agreements in the sale of Joanna to Kenner), the Meyerses had until September 1992, or 21 months after the statute's effective date, in which to file their suit. Nevertheless, for purposes of the reasonable period exception, it makes no difference which category we are dealing with: cases where the repose period immediately extinguishes the inchoate cause of action, or cases where the repose period merely shortens the time in which to file suit. See *Goodman*, 278 Ill. App. 3d at 695, 663 N.E.2d at 21. "In either category *** the result is the same: if a reasonable time exists, no additional time will be given; if not, plaintiffs will be allowed a reasonable period of time within which to file their actions." *Goodman*, 278 Ill. App. 3d at 695, 663 N.E.2d at 21.

Here, Vedder relies upon *M.E.H. v. L.H.*, 177 Ill. 2d 207, 685 N.E.2d 335 (1997), a case that is squarely in point. In *M.E.H.*, the plaintiffs, two women in their mid-forties, sued their parents in 1994 alleging sexual abuse by their father when they were children. The plaintiffs alleged that they had repressed their memories of the abuse and were able to recall it only after receiving psychological therapy. The defendants moved to dismiss, and the trial court granted the motion, holding that the claims against the father were barred by a 12-year statute of repose.[6] Under that statute, which went into effect January 1, 1991, but was repealed shortly before the plaintiffs filed suit, actions for injuries based on childhood sexual abuse were prohibited unless filed within 12 years after the person who was abused turned 18. The appellate court affirmed, as did the supreme court, which rejected the plaintiffs' argument that a reasonable time for them to act should be measured by the full 12-year repose period calculated from the statute's effective date. The supreme court noted that "[t]here is no fixed rule for determining what constitutes a reasonable time," adding that such a determination "turns on the particular facts and circumstances presented to the court in each case." *M.E.H.*, 177 Ill. 2d at 217, 685 N.E.2d at 340. The plaintiffs had filed suit on October 14, 1994, nearly 3 years and 10 months after the statute's effective date, and the supreme court thus held that the plaintiffs "did not act within a reasonable time in prosecuting their claims." *M.E.H.*, 177 Ill. 2d at 219-20, 685 N.E.2d at 341. The court in *M.E.H.* thus rejected the notion that the reasonable period should be defined by the length of the repose period itself measured from the effective date. In the instant case, the Meyerses filed their claim on December 16, 1994, 3 years and *11 months* after the statute's (January 1, 1991) effective date. If the supreme court in *M.E.H.* found that 3 years and 10 months was not a reasonable period, then *a fortiori* 3 years and 11 months in this case would not be reasonable.

The Meyerses attempt to distinguish *M.E.H.* on the grounds that it addressed childhood sexual abuse, an "entirely different" area of the law from legal malpractice, and that the 12-year repose period was "significantly different" from the six-year period in the instant case. What the Meyerses appear to be arguing is that if *M.E.H.* had dealt with legal malpractice and a six-year repose period (instead of 12 years), the court would have held that 3 years and 10 months was a reasonable period in which to file suit and, further, that anything less

---

[6]The trial court concluded that the plaintiffs' claims against their mother were time-barred under a different limitations provision. *M.E.H.*, 177 Ill. 2d at 212, 685 N.E.2d at 338.

than six years would be reasonable. We disagree in that we find no meaningful distinction between the holding in *M.E.H.* and the case at bar. We also note that a period far shorter than 3 years and 10 months has been held to be unreasonable. See *Charles v. Meyer Medical Group, S.C.*, 96 Ill. App. 3d 275, 421 N.E.2d 334 (1981) (19 months unreasonable).

Accordingly, the answer to the first of the two certified questions is in the affirmative as to section 13—214.3, and the Meyerses' suit against Vedder thus is barred by the section 13—214.3(c) statute of repose. Since the answer to the first question is fully dispositive, the second question is rendered moot and need not be considered here.

For the reasons set forth above, we affirm the granting of summary judgment in favor of Defrees in the first consolidated case, and we affirm the denial of the Meyerses' motion to reconsider. As to the second consolidated case, because our answer to the first certified question is in the affirmative, we reverse the denial of Vedder's motion to dismiss the Meyerses' complaint and remand to the circuit court for entry of an order granting Vedder's motion to dismiss.[7]

No. 1—98—4013, Affirmed.

No. 1—99—0504, Certified question answered; reversed and remanded with directions.

COUSINS, P.J., and McNULTY, J., concur.

---

[7]Where an appeal involves a certified question, a reviewing court has the authority to " ' "enter any judgment and make any order that ought to have been given or made" ' " and to make any other orders and grant any relief that may be required. *Hayes v. Wilson*, 283 Ill. App. 3d 1015, 1018, 670 N.E.2d 867, 869 (1996), quoting *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 193, 652 N.E.2d 267, 270 (1995), quoting 134 Ill. 2d R. 366(a)(5).