GRETCHEN REGNERY et al., Plaintiffs-Appellants and Cross-Appellees and Counterdefendants and Cross-Appellees, v. DAVID R. MEYERS et al., Defendants-Appellees and Cross-Appellants and Counterplaintiffs and Cross-Appellants.

First District (2nd Division)   No. 1—94—3760

Opinion filed February 25, 1997.—Rehearing denied April 15, 1997.—Modified opinion filed April 22, 1997.

Robert G. Epsteen, of Chicago, for appellants.

Andrew R. Laidlaw and Thomas H. Peckham, both of Chicago, for appellees.

PRESIDING JUSTICE TULLY delivered the opinion of the court:
Plaintiffs, Gretchen Regnery (hereinafter Gretchen), Verla Regnery (hereinafter Verla), Lynn Regnery (hereinafter Lynn), Elisabeth B. Regnery (hereinafter Elisabeth), William H. Regnery II (hereinafter William), Peter B. Regnery (hereinafter Peter), Anne Regnery (hereinafter Anne), David B. Regnery, Patrick Regnery (hereinafter Patrick) and Bank of America N.T. and S.A. (formerly Security Pacific Bank) (hereinafter Bank of America), brought this action in the circuit court of Cook County against defendants, David R. Meyers and Frederick C. Meyers (hereinafter David and Frederick M., or collectively the Meyerses), seeking damages for breach of fiduciary duty. The trial court found that David breached the fiduciary duties that he owed to plaintiffs and that Frederick M. induced, participated in and accepted benefits from such breaches. It is from this judgment that plaintiffs now appeal and defendants cross-appeal to this court pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).

For the reasons that follow, we affirm in part and reverse in part and remand with directions.

## FACTUAL BACKGROUND

Joanna Western Mills Company (hereinafter Joanna) was a family-owned business, incorporated under the laws of Delaware, with its principal place of business in Chicago, Illinois. In 1980 and 1981, Joanna experienced financial difficulties and had a net operating loss of between $2 million and $4 million over the course of the two years. On August 12 and 13, 1981, shareholder meetings were held to discuss the future of the company. William, then president of Joanna, expressed concern over the 1,904.5 shares of Joanna stock that he had purchased from the Hoover Institute, one of Joanna's investors, in May of 1981, at $500 per share. As a result of the meetings, William resigned as president of Joanna upon the condition that the shares that he purchased from Hoover be repurchased by other Joanna shareholders for $500 per share. Also as a result of the meetings, a voting trust was established, and Verla, one of the majority shareholders, deposited 3,745 shares of Joanna stock into the voting trust. Those 3,745 shares constituted slightly more than half of

the 7,483.5 then-issued and outstanding shares of Joanna. Frederick Regnery (hereinafter Frederick R.), Henry Regnery (hereinafter Henry) and David were named trustees of the voting trust.

In 1982 and 1983, Joanna's financial condition began improving. In 1983, Frederick began discussing with Henry the possibility of Frederick M. and David, as executives, each purchasing 500 shares of Joanna at $500 per share. Henry refused to support such a sale but did agree to support a sale of 300 shares to each at $500 per share. On September 13, 1983, at a board of directors meeting, Henry proposed the sale to the Meyerses. The board passed a resolution to call a special stockholders meeting for purposes of allowing the sale to the Meyerses. Notice of the special stockholders meeting was mailed to each stockholder of record. The notice informed the stockholders that the meeting was being held for the purpose of approving the sale of 600 shares of company stock to two executives of Joanna.

The special stockholders meeting was held on September 26, 1983. David, acting as trustee of the voting trust, voted the trust's 3,745 shares of stock, which constituted 71% of the company's total shares, in favor of the sale to the Meyerses. The sale of stock to the Meyerses was approved by the stockholders at the meeting by 98.8% of the total shares.

In 1986, Frederick R. and Kenner & Company (hereinafter Kenner) each made separate proposals for the purchase of Joanna. At a special meeting of the board of directors, the board voted to approve the Kenner offer and recommended that Alfred be appointed as the stockholders' agent in connection with the Kenner transaction. At the time, Frederick R. was still concerned about the prior sale of stock to the Meyerses and threatened to assert a claim on behalf of himself and the company relating to that sale. Thus, the board authorized the payment of $150,000 to Frederick R. for, among other things, his covenant not to sue Joanna, its stockholders or directors in connection with the 1983 sale of stock to the Meyerses.

The stockholders were notified of the settlement of Frederick R.'s claims. They were also asked to sign a consent that authorized the execution of the merger agreement, escrow agreement and agency agreement, which appointed Alfred Regnery (hereinafter Alfred) as the shareholders' agent. The consent was signed by a majority of Joanna shareholders. As a result of the sale to Kenner, the Joanna shareholders received $7,766.50 per share owned, $7,097 of which was paid in cash and $669.50 of which was put into escrow to cover corporate liabilities. The shareholders also received stock rights for 10% of the common and preferred stock in the new corporation.

In July 1987, Gretchen, Anne, Verla, Lynn and Peter filed the present action against defendants. Defendants contacted Alfred and requested that he release plaintiffs' claims against them pursuant to the agency and consent agreements. Thereafter, in a separate action, Alfred filed a complaint for declaratory judgment in the circuit court of Cook County, naming as defendants all parties in the present case and all former Joanna shareholders, requesting that the court enter a judgment authorizing him to execute a release of plaintiffs' claims brought in the present action. The two cases were consolidated and both Alfred and plaintiffs herein filed cross-motions for summary judgment on Alfred's claims. The trial judge granted Alfred's motion, thus allowing his execution of the release. On appeal, this court reversed the trial court's order and remanded the case for further proceedings. On remand, several other Joanna shareholders requested and were granted leave to intervene. However, the remaining Joanna shareholders who were named in the consolidated suit filed by Alfred have not intervened in the present suit and have not asserted their own separate claims against defendants.

Following a bench trial, the trial court found that defendant David breached his fiduciary duties owed to the minority stockholders of Joanna and that defendant Frederick M. induced those breaches, participated in them, knowingly accepted benefits from them and engaged in an intentional plan to act in concert with David. Moreover, the trial judge found that the Meyerses received $4,359,900 in profit from David's breaches of fiduciary duties as well as $195,000 in dividends on the stock they wrongfully acquired. The trial court awarded plaintiffs, who were 35.71% stockholders in Joanna at the time of the breach, 35.71% of the amounts obtained by the Meyerses and denied plaintiffs' claim for interest. Plaintiffs filed a motion to modify the trial court's judgment. The trial court treated plaintiffs' motion as a post-trial motion to reconsider and denied the motion.

## ISSUES PRESENTED FOR REVIEW

On appeal, plaintiffs argue that the trial court erred when it: (1) allowed defendants to retain the majority of the profits they obtained through their breach of fiduciary duties; and (2) denied plaintiffs' claim for prejudgment interest on such profits. On cross-appeal, defendants raise the following issues: (1) whether the trial court erred in finding that the 1986 consent to the Kenner transaction does not constitute a release of plaintiffs' claims against them; (2) whether this court's decision in *Regnery v. Regnery*, 211 Ill. App. 3d 607 (1991), was erroneous in light of additional evidence presented at trial; (3) whether the trial court improperly disregarded Delaware law; (4)

whether the trial court erred in finding that defendants breached their fiduciary duties to the voting trust and to the minority stockholders; and (5) whether the trial court erred in finding that Frederick M. induced David to breach fiduciary duties. As the issues raised in the direct appeal are dependent upon the outcome of those raised in cross-appeal, we will address the arguments raised on cross-appeal first.

## OPINION

■ We first turn to defendants' contention that the trial court erred in finding that the 1986 consent agreement to the Kenner transaction does not constitute a release of plaintiffs' claims against them. In order to determine the extent and scope of a release, it is necessary to consider the language of the instrument as well as the circumstances surrounding the transaction. *535 North Michigan Condominium Ass'n v. BJF Development, Inc.*, 143 Ill. App. 3d 749, 751 (1986). The interpretation of a party's agreement or contract on appeal is a question of law to be determined by the appellate court *de novo. Best Coin-Op, Inc. v. Old Willow Falls Condominium Ass'n*, 120 Ill. App. 3d 830, 833 (1983). In the present case, the language of the 1986 consent agreement reads in pertinent part:

"WHEREAS, it is in the best interests of the stockholders of this corporation to fully and finally resolve all claims and matters related to the Acquisition Agreement, Escrow Agreement, Agreement of Merger and the issuance of the Company's stock."

Defendants claim that, since the consent agreement stated that plaintiffs agree to resolve all claims related to the issuance of the company's stock and since no limitations were included, plaintiffs thereby released all claims that they had against defendants relating to defendants' purchase of company stock. We disagree.

Although the consent agreement contains the above-referenced language, it does not clearly and unequivocally state that plaintiffs released such claims against defendants. Moreover, the words "I release" or "we release" are not found within the agreement. Rather, as the trial court noted, the only reference made toward releasing any claims is made in the recitals, or the "whereas" clauses, preceding the agreement. As this court stated in *Illinois Housing Development Authority v. M-Z Construction Corp.*, 110 Ill. App. 3d 129 (1982), a recital is merely an explanation of the circumstances surrounding the execution of the contract but is not a binding obligation unless referred to in the operative portion of the contract. *Illinois Housing Development*, 110 Ill. App. 3d at 144.

Thus, in the present case, we find that the language in the recitals of the consent agreement was included for purposes of consum-

mating the sale to Kenner. The purpose of such language was simply to restrict plaintiffs and others similarly situated from asserting claims that arise in connection with the acquisition, merger, escrow or agency agreements with Kenner or the Kenner transaction itself. See *Regnery v. Regnery*, 211 Ill. App. 3d 607, 615 (1991). Plaintiffs' claims bear no relation to the Kenner transaction and do not arise under any of the agreements associated with that transaction. Moreover, even if plaintiffs' claims had arisen under the Kenner transaction, it is questionable as to whether such language buried in a "whereas" clause would have been sufficient even to constitute a release of plaintiffs' claims. If defendants desired that plaintiffs release all claims against them, they could have simply requested that plaintiffs execute a covenant not to sue, as they did with Frederick R. Accordingly, we find that the trial court correctly found that the consent agreement did not constitute a release of plaintiffs' claims against defendants.

■ We now turn to defendants' contention that this court's decision in *Regnery* was erroneous in light of additional evidence presented at trial. Specifically, defendants request that this court depart from its previous decision and rule that Alfred was properly authorized to release plaintiffs' claims against defendants. Upon a careful review of the *Regnery* opinion and the record on appeal in the instant case, we do not find that our decision in that case was palpably erroneous. See *Martin v. Federal Life Insurance Co.*, 164 Ill. App. 3d 820, 824 (1987); *Stallman v. Youngquist*, 152 Ill. App. 3d 683, 689 (1987). Assuming, *arguendo*, that plaintiffs' claims are identical to those asserted by Frederick R., we still find, as we did in *Regnery*, that the agency agreement empowers Alfred to dispose or settle only those claims relating to the Kenner transaction or the documents executed in connection therewith. Plaintiffs' claims asserted in the instant case, although they arise out of the sale of company stock to the Meyerses, are in no way related to the Kenner transaction. Accordingly, we do not find that Alfred was authorized to release plaintiffs' claims against defendants. Thus, we need not disturb our decision in *Regnery*.

■ We will now address defendants' contention that the trial court erred by disregarding Delaware law. Section 152 of the Delaware Corporations Code (hereinafter the Delaware Code) provides in pertinent part: "In the absence of actual fraud in the transaction, the judgment of the directors as to the value of such consideration [for which shares of stock with par value may be issued] shall be conclusive." Del. Code Ann. tit. 8, § 152 (1991). Defendants argue that, under Delaware law, the decision of the board of directors to set

the price of the stock sold to defendants at $500 per share is conclusive and should not have been disturbed by the trial court unless plaintiffs had shown actual fraud. We disagree.

Although defendants are correct in their initial premise that, under section 152 of the Delaware Code, a board of directors' determination as to the value of the company's stock is conclusive absent a showing of fraud, this section is inapplicable to the facts of the present case. Although the Joanna board of directors considered the sale of 600 shares of company stock to defendants for $500 per share, the board itself did not set the price. Rather, the board left it up to the shareholders to decide whether such a sale at that price was proper. Even the language in the board's resolutions indicates that the decision was that of the shareholders: "[T]he Board of Directors hereby calls and requests *** a special meeting of stockholders *** for the purpose of considering the sale of 300 shares of common stock of the Company, $100 par value per share, to each of David R. Meyers and Frederick C. Meyers at a price of $500 per share ***." Following such resolution of the board, a special meeting of the stockholders was held at which the sale to the Meyerses was voted on and approved. Thus, we find that the trial court's determination that the board of directors did not vote to issue the 600 shares of stock to defendants was not against the manifest weight of the evidence. Since we find that it was not the board that determined the price of the shares or approved the sale to defendants, it was unnecessary for the trial court to require plaintiffs to make an actual showing of fraud. Moreover, given this finding, the trial court properly questioned the adequacy of price. Accordingly, we find no error in the trial court's determinations.

■ We now address defendants' fourth argument that the trial court erred in finding that defendant David breached his fiduciary duties to the voting trust. Defendants argue that the trust instrument itself created a conflict of interest for the trustees of the voting trust. Therefore, defendants argue that under *In re Estate of Halas*, 209 Ill. App. 3d 333 (1991), where a conflict of interest is created by the trust instrument itself, the fiduciary will not be held liable for his conduct unless the fiduciary has acted dishonestly or in bad faith or has abused his discretion. *Halas*, 209 Ill. App. 3d at 345. Defendants claim that plaintiffs have not met their burden of proof, and, thus, the trial court erred in finding a breach of duty. We disagree.

As plaintiffs point out, the trust agreement specifically provides that the trustees shall exercise their best judgment so that the interests of the trust certificate holder (*i.e.*, Verla) shall be safe-

guarded. Moreover, it is well settled that a trustee owes the highest duty to his beneficiary to fully and completely disclose all material facts relating to dealings with the trust. *Obermaier v. Obermaier*, 128 Ill. App. 3d 602, 607 (1984). Because we agree with the trial court's ruling that the shareholders, rather than the board members, actually determined the price of the shares sold to defendants, we find that David abused his discretion by voting in favor of the sale to himself and his brother at a price substantially below the fair market value of the shares. We further agree that David acted in bad faith by disregarding the interests of Verla and causing the value of her stock to be diluted. Instead of taking into account Verla's interest as a majority stockholder, David acted in his own best interest and in that of his brother's. Moreover, upon a careful review of the terms of the voting trust, we agree with the trial court's interpretation that a decision of the trustees regarding a sale of shares must be unanimous. Therefore, we find that David abused his discretion in causing the voting trust to vote in favor of the sale without a unanimous decision of the trustees. Finally, we also agree with the trial court that in failing to notify Verla of his intentions to vote her stock in favor of a sale in which he was an interested party, David also abused his discretion. Accordingly, the findings of the trial court are not against the manifest weight of the evidence.

■ Next, defendants argue that the trial court erred in finding that David as trustee and majority stockholder breached his fiduciary duties owed to the minority stockholders. Delaware courts have consistently held that majority stockholders owe a fiduciary obligation to minority stockholders. See *Panter v. Marshall Field & Co.*, 486 F. Supp. 1168 (D.C. Ill. 1980); *Singer v. Magnavox Co.*, 380 A.2d 969 (Del. 1977). Because the voting trust was the majority stockholder of the corporation, David, as trustee, owed a fiduciary duty to the minority stockholders. Thus, plaintiffs contend that David breached his fiduciary duties to the minority shareholders by causing the voting trust to vote in favor of a sale of stock to his brother and himself at a price far below fair market value. We agree with plaintiffs' contention.

Because David stood on both sides of the transaction (*i.e.*, as majority shareholder voting to sell the shares and as employee wishing to purchase such shares), he and Frederick M. have the burden of proving the fairness of such a transaction. See *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983); *Singer*, 380 A.2d at 976. Defendants rely on *Sandler v. Schenley Industries, Inc.*, 79 A.2d 606 (Del. Ch. 1951), for the proposition that where there is a disparity between the fair market value of stock and the price at which it is sold, the transaction may still be valid as a form of compensation. *Sandler*, 79 A.2d

at 610. However, we find *Sandler* factually distinguishable from the case at hand, for the executive purchasing the stock was not the controlling shareholder who voted in favor of the sale. Moreover, the trial court in the present case specifically found that, not only were the shares worth substantially more than $500 per share at the time of the sale, but also that defendants knew that they were worth substantially more. Accordingly, we find that the trial court properly held that David breached his fiduciary duty to minority shareholders.

■ We now turn to defendants' final argument that the trial court erred in finding that Frederick M. induced David to breach fiduciary duties. Specifically, defendants argue that there is insufficient evidence to support a finding that Frederick M. induced or participated in any breach of fiduciary duty. Plaintiffs contend, however, that Frederick M. was instrumental in the scheme that caused David to breach his fiduciary duties to the voting trust and the minority shareholders. We agree with plaintiffs and find ample evidence of Frederick M.'s participation in the events leading to a breach of fiduciary duty by David.

A third party who colludes with a fiduciary in committing a breach of duty, induces or participates in such breach, and obtains the benefits therefrom is directly liable to the aggrieved party. *Village of Wheeling v. Stavros*, 89 Ill. App. 3d 450, 455 (1980). In the present case, the record indicates that it was Frederick M. who initiated the idea of the sale and proposed such sale to the Joanna board. Moreover, the evidence in the record shows that Frederick M. fully participated in all steps of the transaction and certainly reaped the benefits therefrom. Thus, we agree with the trial court's finding that Frederick M. induced his brother to breach his fiduciary duties and that Frederick M. participated in such breaches and knowingly accepted the benefits from such breaches. Thus, under *Village of Wheeling*, we find that Frederick M. is directly liable to plaintiffs as a result of his acts and omissions in connection with such breaches.

■ We now consider plaintiffs' first contention that the trial court erred when it allowed defendants to retain the majority of the profits they obtained through their breach of fiduciary duties. Plaintiffs cite several cases for the proposition that a fiduciary may not retain any profits obtained through a breach of duty. See *In re Estate of Swiecicki*, 106 Ill. 2d 111, 119 (1985); *Home Federal Savings & Loan Ass'n v. Zarkin*, 89 Ill. 2d 232, 245 (1982); *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939); *Lynch v. Vickers Energy Corp.*, 429 A.2d 497, 501 (Del. 1981). This rule applies regardless of whether the party to whom the duty was owed has suffered any loss as a result of the breach. *Zarkin*, 89 Ill. 2d at 245. According to plaintiffs, however, the trial court

overlooked such precedent and awarded them what it believed they suffered from the breach.

In its final judgment order, the trial court stated that it was limiting the judgment for plaintiffs to 35.71% of the profits and dividends obtained by defendants during the period September 1983 through October 1986 on the 600 shares of Joanna stock in question in this case. The trial court found that 35.71% represented the percentage of issued and outstanding Joanna shares owned by plaintiffs prior to the sale of the 600 shares to defendants. The trial court also specifically found that this suit does not resolve other possible disputes between defendants and other possible plaintiffs not parties to the instant proceeding. Plaintiffs contend however, that because the breach of duty occurred in 1983, the statute of limitations would bar the other possible plaintiffs from asserting their own causes of action at this point. Thus, plaintiffs contend that they should be awarded a greater recovery so as not to allow defendants to benefit from their breach. We disagree.

At the time this suit was filed, plaintiffs sought to bring it as a class action. However, the trial court denied such class certification. The Illinois Supreme Court in *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320 (1977), held that the filing of a class action tolls the statute of limitations as to all asserted members who would have been parties had the suit been permitted to continue as a class action. *Steinberg*, 69 Ill. 2d at 342. This tolling doctrine has been held to apply to plaintiffs who intervene after the denial of class certification as well as those who later file their own individual complaints. *Hess v. I.R.E. Real Estate Income Fund, Ltd.*, 255 Ill. App. 3d 790, 805-06 (1993). However, the United States Supreme Court in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 38 L. Ed. 2d 713, 94 S. Ct. 756 (1974), stated that the tolling doctrine is not intended to protect members of a purported class who have slept on their rights. *American Pipe*, 414 U.S. at 554-55, 38 L. Ed. 2d at 727, 94 S. Ct. at 767-77. Therefore, such cases should be determined on a case-by-case basis, with the courts weighing the interests that will be served by applying the tolling doctrine against the possibility of abuse. See *Hess*, 255 Ill. App. 3d at 808.

In the present case, we find that the interests served in applying the tolling doctrine outweigh the potential for abuse. This case involves a breach of fiduciary duty, and, as plaintiffs point out, the law clearly states that a defendant should not be permitted to retain any profits from such a breach. Thus, we find that the trial court erred in allowing defendants to retain all but 35.71% of the profits and dividends they received as a result of the breach. Therefore, we

find that, in the interests of justice and equity, the tolling doctrine should be applied. However, the concerns of the trial court and of defendants in preventing plaintiffs from recovering a windfall are also well taken by this court. Accordingly, pursuant to the powers granted this court by Supreme Court Rules 366(a)(2) and (a)(5) (155 Ill. 2d Rs. 366(a)(2), (a)(5)), we direct the circuit court to order that notice be given to all persons who were Joanna stockholders at the time of the sale of the 600 shares to defendants. Such notice should provide that any parties who wish to intervene in this lawsuit file a statement of intent to intervene within a certain time. The circuit court should then allow all parties an opportunity to raise any objections that they might have to the joining of any particular individual. Finally, the circuit court should determine which parties may rightfully join the lawsuit and then join such parties. We further instruct the circuit court to disgorge defendants of all profits and dividends obtained during the period September 1983 through October 1986, on the 600 shares of Joanna stock in question in this case and award all plaintiffs, both those who are now parties to this action and those who choose to intervene, their *pro rata* share of such profits and dividends. Finally, we direct the trial court to apply the equitable "common fund doctrine" for purposes of allocating plaintiffs' attorney fees among the original as well as the newly added plaintiffs in this case. See generally *Smith v. Marzolf*, 81 Ill. App. 3d 59 (1980); R. Thompson, *The Common Fund Doctrine: An Uncommonly Used Precept in Personal Injury Cases*, 84 Ill. B.J. 570 (1996).

■ Still to be considered is plaintiffs' contention that the trial court erred in denying their claim for prejudgment interest. Prejudgment interest may be awarded by the courts when warranted by equitable considerations and disallowed where such an award would not comport with justice and equity. *In re Estate of Wernick*, 127 Ill. 2d 61, 87 (1989). Whether equitable circumstances support an award for prejudgment interest is a matter lying within the sound discretion of the trial court and will not be disturbed on review absent an abuse of discretion. *Wernick*, 127 Ill. 2d at 87.

■ In the present case, the trial court found that because the shares of Joanna had greatly appreciated, plaintiffs' interests also significantly appreciated. As a result, the trial court found that plaintiffs had been adequately compensated as a result of the appreciation and that justice did not require an award of prejudgment interest. We agree. Our supreme court has determined that prejudgment interest is a means of compensating injured parties for any economic loss suffered, but it is not intended to be used as a sanction against the wrongdoer. See *Wernick*, 127 Ill. 2d at 87. Since plaintiffs

received a significant recovery as a result of the appreciated shares, we find that the trial court did not abuse its discretion in refusing to make an award of prejudgment interest in this case. Thus, we find no error on this point.

Accordingly, the judgment of the circuit court of Cook County is affirmed in part and reversed in part and remanded with directions.

*Affirmed in part; reversed in part; and remanded with directions.*

GREIMAN and GALLAGHER, JJ., concur.