FIFTH DIVISION

MARCH 7, 2003

No. 1-01-3108

ROBERT E. KEHOE, JR., ) APPEAL FROM THE

) CIRCUIT COURT OF

Plaintiff-Appellant, ) COOK COUNTY. 

)

v. )

)

GERALD G. SALTARELLI and BUTLER, ) 

RUBIN, SALTARELLI AND BOYD, ) HONORABLE 

) MICHAEL J. HOGAN,

Defendants-Appellees. ) JUDGE PRESIDING.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

This appeal arises out of an attorney malpractice action filed by plaintiff, Robert Kehoe, Jr., against defendants, attorney Gerald Saltarelli and the law firm Butler, Rubin, Saltarelli and Boyd (collectively, defendants or Saltarelli or Butler), based on defendants' decision to decline to represent plaintiff in a legal malpractice claim filed against plaintiff and his former law firm, Wildman, Harrold, Allen & Dixon (Wildman or the Wildman firm ).  Plaintiff appeals from an order of the circuit court of Cook County dismissing his second amended complaint (revised), which contained four counts against defendants, including:  (1)  breach of fiduciary duties (count I); (2) tortious interference with contract (count II); (3) participation in Wildman's breach of fiduciary duties (count III); and (4) a common law claim for attorney fees as a result of breach of contract (count IV).  We affirm.

BACKGROUND

 Plaintiff, Robert Kehoe, Jr., was a partner in the Wildman firm from 1979 through 1996.  In 1997, plaintiff filed suit against Wildman for refusal to distribute his full financial interest in the partnership (Wildman litigation).  The Wildman litigation remains pending and plaintiff and Wildman have characterized each other as "adversaries."  On March 5, 1998, two former clients of Wildman, Matthew Songer and Robert Songer, sued plaintiff and the Wildman firm in connection with legal services performed by plaintiff and Wildman between 1992 and 1996 (
Songer v.  Kehoe,
 No. 98 CH 2895).  Wildman initially retained defendants, Saltarelli and the Butler firm, to provide its legal defense of the Songer lawsuit.  After retaining defendants, Wildman instructed Saltarelli to contact plaintiff to discuss the prospect of joint representation of both Wildman and plaintiff individually.

Plaintiff initially withheld his consent to joint representation.  Subsequently, plaintiff agreed to defendants' representation subject to its recognition of certain conflicts of interest.  Defendants did not agree to plaintiff's request and declined to represent plaintiff, informing him that he should seek other counsel. Ultimately, defendant represented himself 
pro se
 and obtained a dismissal of all of the claims against him.  The Songer lawsuit was dismissed on June 15, 2001.

Plaintiff filed a one-count complaint against defendants for attorney malpractice which was dismissed on September 21, 2000.  Plaintiff filed his second amended complaint (revised) (hereafter complaint) on July 17, 2001, alleging four counts as follows:  legal malpractice/breach of fiduciary duty; tortious interference; participation in Wildman's breach of fiduciary duty; and attorney fees for breach of contract.

In his complaint, plaintiff alleged that in defending the Songer lawsuit, Wildman had the responsibility to procure conventional liability insurance.  However, by agreement of the partners, Wildman adopted a plan of self-insurance as follows:  In the event of a claim arising out of the firm's activities, Wildman would arrange for defense counsel and pay the expense of the defense using accumulated assets that had not been distributed to the partners.  Plaintiff alleged that this defense plan was in place prior to the Songer lawsuit and was routinely applied over the years as a matter of custom and practice.

Plaintiff alleged that at the time Wildman retained defendants for the Songer lawsuit Wildman "intended to exploit the defense of the Songer lawsuit to offset the plaintiff's pending partnership claims against the Wildman firm."  Plaintiff described Wildman's "strategy" as follows:   "(A) Insisting that one attorney represent both the plaintiff and the Wildman firm so that the defense counsel representing the plaintiff would be subject to direction and control by the Wildman firm as a direct client.

(B) Managing the defense so as to give priority to defeating the firm's direct exposure for its own acts of independent culpability, relative to its exposure for its own acts of independent culpability, relative to its exposure for vicarious liability that could be attributed to the plaintiff.

(C) Eventually asserting a claim for reimbursement from the plaintiff, the amount of which would be maximized by depicting whatever might be paid in settlement as being attributable entirely to claims for which the Wildman firm was only vicariously liable."

In count I, plaintiff alleged that between May 1, 1998, and May 27, 1998, defendants were his attorneys and in that capacity owed plaintiff fiduciary duties, including the duty to investigate and disclose conflicts of interests that arose from simultaneously representing the Wildman firm.  Plaintiff alleged that on May 1, 1998, defendants agreed to represent both him and Wildman in the Songer litigation.  During the week of May 4, 1998, plaintiff met with defendants as attorney/client to discuss confidential matters relating to his defense.  Plaintiff directed defendants' attention to whether conflicts of interest prevented one attorney from representing both parties.  Saltarelli denied the existence of any such conflict.  In a letter of Monday, May 11, 1998, plaintiff proposed that the parties meet promptly to resolve the issue of representation.  In a letter dated May 15, 1998, Wildman insisted that plaintiff be represented by defendants, stating that "[i]f you choose to be separately represented under these circumstances, the firm will not be obligated to pay for your defense or indemnify you against any adverse settlement or verdict."

In a letter dated Monday, May 18, 1998, plaintiff expressly consented to defendants serving as his legal counsel.  In response, Saltarelli left a voicemail message for plaintiff stating he would call plaintiff back to discuss his letter and also stating that he would be getting an extension on the filing of an answer.  Plaintiff alleges that by virtue of this message, defendants led him to reasonably believe that they would act as his counsel.

Following May 18, 1998, plaintiff alleged that defendants continued to affirmatively act as his attorney, evidenced by their letter to counsel for the Songers and by another voicemail message Saltarelli left for plaintiff.  When defendants were unable to "work out an arrangement" in their discussions with the Wildman firm, defendants requested that plaintiff waive their professional duties to him.  At a meeting on May 26, 1998, defendants demanded that plaintiff waive such duties, and plaintiff refused to do so.  By letter dated May 27, 1998, defendants instructed plaintiff to secure other counsel.  

Plaintiff alleged that defendants breached the following duties:  (1) duty to investigate and determine the existence of conflicts of interest; and (2) duty to "deal honestly" with plaintiff and "refrain from making misrepresentations" prejudicial to plaintiff in connection with defendants' withdrawal from representing him.  Plaintiff sought damages in the amount of $130,000, for the 
pro se
 defense of his own lawsuit, including litigation expenses and filing fees.

In count II, plaintiff alleged tortious interference on the part of defendants for interfering with his contractual relationship with Wildman, by engaging in a course of action that misled Wildman into relying on defendants' claims that no conflicts of interest prevented defendants from representing both plaintiff and Wildman.  Plaintiff alleged malice on the part of defendants, stating that defendants' motive for their misconduct was to "favor the interests of Wildman and thereby better ensure that the Wildman firm would retain them as counsel in the Songer lawsuit."

Plaintiff's count III contained further allegations of breach of fiduciary duty against defendant for "knowing participation in the Wildman firm's withholding" benefits of prepayments for legal services owed to plaintiff by Wildman.  Plaintiff alleged that defendants refrained from investigating and reporting conflicts of interest that would have precluded defendants from representing both plaintiff and Wildman in the Songer lawsuit.  Plaintiff requested restitution in the form of the value of the prefunded legal defense that Wildman did not distribute "but rather kept for itself," an amount in excess of $50,000.

Count IV of plaintiff's complaint alleged that defendants breached their contract to represent plaintiff, causing plaintiff "to be deprived of the benefit of defendants' services that would have confirmed that conflicts existed and, consequently, deprived of the benefit of alternative counsel."  Plaintiff asserted damages in the amount of $130,000 in compensation for his 
pro se
 representation.  

 Defendants filed a motion to dismiss plaintiff's complaint pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2000)) for failure to state a cause of action.  Defendants referred to an excerpt of a letter dated May 11, 1998, contained in plaintiff's complaint, written by plaintiff to attorney Michael Trucco, separate counsel to Wildman on the Songer matter, in which plaintiff stated:

"I understand that the firm has engaged Gerry Saltarelli to defend the interests of both the firm and myself and is tendering his services to me.  I am troubled by the fact that the firm has not tendered separate counsel for each of the defendants in order to deal with conflicting interests. 

* * * 

Certainly, it makes sense to resolve this issue at the outset, if possible, so as to avoid the prospect that at some future date separate counsel must be retained and that Gerry would be disqualified from continuing any representation of either defendant.  
To avoid confusing the situation, I have kept the relationship between Gerry and myself on hold 
* * *." (Emphasis added.)

Wildman responded by letter of May 15, 1998:

"As a former partner in the firm the firm will provide you with a defense through counsel of its and ALAS' [Attorneys' Liability Assurance Society, Inc.] choice * * * the firm does not agree that there is any material actual or potential conflict of interest between you and the firm with respect to the issues raised in the Songer case. * * * If you choose to be separately represented under these circumstances, the firm will not be obligated to pay for your defense or indemnify you against any adverse settlement or verdict."

This letter was also attached as an exhibit to plaintiff's complaint.

Defendants argued that plaintiff was unsuccessful in securing funding for separate counsel and offered to agree to defendants' representation provided that defendants consented to a series of conditions that, defendants asserted, would have required Saltarelli to violate the attorney-client relationship he had previously established with Wildman.  

Saltarelli subsequently met with plaintiff on May 26, 1998, to discuss the prospects for joint representation of plaintiff and Wildman.  At this meeting, Saltarelli advised plaintiff that his conditions for Saltarelli's retention were unacceptable because they were inconsistent with the proposed joint representation.  Saltarelli memorialized his rejection of plaintiff's conditions and advised plaintiff to secure other legal counsel in a May 27, 1998, letter as follows:

"When we first met, you indicated that you were not prepared to accept our representation as you had certain matters that you wished to clarify with the Wildman firm.  Because of your reservations, we deferred any substantive discussion of this case.

* * * 

I then received the May 18 letter in which you outline the conditions under which you expect this firm to operate if it is to represent you. Those conditions are unacceptable because they would prevent us from fulfilling our professional responsibilities to the Wildman firm."

Defendants argued that Saltarelli's decision to decline to represent plaintiff individually was communicated to plaintiff with "ample time" for plaintiff to obtain separate counsel and had no adverse impact on plaintiff's defense of the Songer litigation.  After Songer settled with Wildman and agreed to voluntarily dismiss their action against plaintiff, plaintiff was not obligated to contribute to the settlement.  Thus, plaintiff sustained no damages.

After a hearing on defendants' motion to dismiss, the trial court determined that the allegations contained in plaintiff's complaint were factually and legally insufficient and dismissed the action with prejudice to reinstate the claim.  The trial court stated as follows:

"I have heard the arguments, and I'm going to grant the motion basically for the reason I had stated previously, but also it seems to me I don't think there was an attorney-client relationship.  I think that I can look at the complaint, and I can look at the letters, and I don't think there was a meeting of the minds.  I don't think there is [
sic
] any contract claims, and I don't think there is any contract between the parties, and I don't think there was anything, any wrong claimed.  So I'm going to grant the motion.  Thank you very much."

Plaintiff filed his timely appeal on August 14, 2001.

OPINION

 Plaintiff contends that the trial court erred in dismissing his second amended, revised complaint, which contained four counts.  

A motion to dismiss brought under section 2-615 admits all well-pled facts in the plaintiff's complaint. 
People ex rel. Ryan v. Telemarketing Associates, Inc.
, 198 Ill. 2d 345, 763 N.E.2d 289 (2001). When reviewing a section 2-615 dismissal, the reviewing court must determine whether the allegations, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted.  
Connick v. Suzuki Motor Co.
, 174 Ill. 2d 482, 490, 675 N.E.2d 584 (1996).  Dismissal will be held proper only if it clearly appears that no set of facts can be proved under the pleadings that will entitle the plaintiff to recover.  
Bryson v. News America Publications, Inc.
, 174 Ill. 2d 77, 86-87, 672 N.E.2d 1207 (1996).  We review
 
 a section 2-615 motion to dismiss 
de novo
.  
Neade v. Portes
, 193 Ill. 2d 433, 439, 739 N.E.2d 496 (2000).

We also consider the exhibits attached to the complaint (
Flip Side, Inc. v. Chicago Tribune Co.
, 206 
 
Ill. App. 3d 641, 564 N.E.2d 1244 (1990)), and where the allegations of the complaint conflict with the facts contained in an exhibit, the exhibit controls.  
McGuire v. Ameritech Cellular Corp
., 314 
 
Ill. App. 3d 83, 731 N.E.2d 343 (2000).

A.  Count I:  Legal Malpractice/Breach of Fiduciary Duty 

In any legal malpractice action, a plaintiff must plead the existence of a valid underlying cause of action.  
Sheppard v. Krol
, 218 Ill. App. 3d 254, 578 N.E.2d 212 (1991).  Four elements must be alleged and proven:  (1) the existence of an attorney-client relationship that establishes a duty on the part of the attorney;  (2) a negligent act or omission that breached that duty; (3) proximate cause that establishes that but for the attorney's negligence, plaintiff would not have suffered an injury;  and (4) damages.  
Pelham v. Griesheimer
, 92 Ill. 2d 13, 440 N.E.2d 96 (1982).

The attorney-client relationship is consensual and arises only where both the attorney and the client have consented to the retention.  
Torres v. Divis
, 144 
 
Ill. App. 3d 958, 963, 494 N.E.2d 1227 (1986).  A client must manifest his authorization for an attorney to act on his behalf and the attorney must indicate his acceptance of the authorization to represent the client's interests.  
Torres
, 144 
 
Ill. App. 3d at 963.

Here, plaintiff alleges that on or before May 1, 1998, without his knowledge or participation, Saltarelli and Wildman agreed that defendants would represent Wildman in the Songer litigation.  Plaintiff further alleges that, thereafter, Saltarelli consented to the defendants also serving as his counsel in the Songer litigation.  However, the record shows that plaintiff's letter of May 18, 1998, merely established plaintiff's conditional consent to representation by defendants.  The exhibits, therefore, demonstrate that defendants refused to represent plaintiff; in Saltarelli's letter of May 27,1998, as quoted above, Saltarelli informed plaintiff that his conditions of representation were unacceptable and that he should secure other counsel.  

Under the facts alleged in plaintiff's complaint, he has failed to show the existence of an attorney-client relationship.  Because plaintiff has shown no duty of defendants to him, he cannot show any breach of that duty.  Plaintiff's entire appeal hinges on the allegation of a contractual relationship which finds no support in the record. 

B.  Count II:  Tortious Interference 

To recover under a theory of tortious interference, a plaintiff is required to plead and prove the following:  (1) the existence of a valid enforceable contract between the plaintiff and a third party; (2) the defendant was aware of the contract; (3) defendant intentionally and unjustifiably induced a breach of the contract; (4) defendants' wrongful conduct caused a subsequent breach of the contract by the third party; and (5) the plaintiff was damaged as a result.  
Strosberg v. Brauvin Realty Services, Inc.
, 295 
 
Ill. App. 3d 17, 32-33, 691 N.E.2d 834, 845 (1998).

In the present case, plaintiff contends that defendants failed to represent him and made intentional false statements against him, thereby prejudicing him and causing Wildman to refuse to tender separate counsel for him in the Songer litigation.  However, the complaint fails to adequately allege how defendants' decision to decline to represent him pursuant to his specific representation demands either constituted "false statements" or prejudiced him in such a way that Wildman refused to obtain different counsel for him.  The record shows that under the agreement plaintiff had with Wildman as a former partner, Wildman would not be obligated to pay for his defense or to indemnify plaintiff against any adverse settlement or verdict if he chose to be separately represented.  Plaintiff has failed to make a case for tortious interference.

C.  Count III:  Participation in Wildman's Breach of Fiduciary Duties

Plaintiff contends that Wildman was obligated to release "pre-funded firm assets" to pay for separate counsel to defendant him in the Songer litigation.  Plaintiff argues that Wildman's refusal to pay for separate counsel constituted a breach of fiduciary duty and that defendants "intentionally participated" in this breach by failing to investigate and report on potential conflicts in exchange for Wildman's agreement to retain defendants as its counsel.  In his complaint, plaintiff conceded that defendants were retained to represent Wildman prior to any discussions with plaintiff for a joint defense.

This court has held that a third party who colludes with a fiduciary in committing a breach of duty, induces or participates in such breach, and obtains the benefits therefrom is directly liable to the aggrieved party.  
Regnery v. Meyers
, 287 Ill. App. 3d 354, 679 N.E.2d 74 (1997); 
Village of Wheeling v. Stavros
, 89 Ill. App. 3d 450, 455, 411 N.E.2d 1067 (1980).

Here, plaintiff has failed to show either that Wildman breached a fiduciary duty, that defendants participated in such a breach, or that defendants benefitted from such purported breach.  Under these circumstances, defendant's claim was properly dismissed. 

D.  Claim for Attorneys Fees

Finally, plaintiff contends that he is entitled to reimbursement of attorney fees for his expenses incurred in representing himself in the Songer litigation.

Our courts have declined to award attorney fees to 
pro se
 litigants, even when the litigants are attorneys.  The United States Supreme Court has held that a 
pro se
 attorney is not entitled to recover attorney fees, noting that permitting such recovery would act as a disincentive to engage counsel and that the policy of "furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case."  
Kay v. Ehrler
, 499 U.S. 432, 438, 113 L. Ed. 2d 486, 493, 111 S. Ct. 1435, 1438 (1991).  Illinois courts have similarly prohibited the award of attorney fees in 
pro se
 litigation.  See, 
e.g
.,  
Hamer v. Lentz
, 132 Ill. 2d 49, 547 N.E.2d 191 (1989) (no attorney fee award to attorney proceeding 
pro se
, notwithstanding statute authorizing recovery of reasonably incurred attorney fees).

Based on the record on appeal, plaintiff's complaint was properly dismissed.  We therefore affirm the judgment of the trial court.  

Affirmed.

QUINN and HARTIGAN, JJ., concur.