In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-1384

LEWIS BORSELLINO and I.M. ACQUISITIONS, LLC,

*Plaintiffs-Appellants,*

*v.*

GOLDMAN SACHS GROUP, INCORPORATED,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 4401—**Charles R. Norgle, Sr.**, *Judge.*

———————

ARGUED SEPTEMBER 13, 2006—DECIDED FEBRUARY 20, 2007

———————

Before BAUER, WOOD, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Lewis Borsellino was a one-third partner in Chicago Trading and Arbitrage ("CTA"), a company that facilitated stock trading through remote access to the electronic stock exchange NASDAQ. His partners, whom he accused of acting behind his back and improperly using CTA resources, developed a technology to allow remote trading to occur without having to visit CTA's offsite trading location. They started a new business called Archipelago using this technology, and Goldman Sachs became a 25% owner. Archipelago was enormously successful. Borsellino sued Goldman Sachs, contending that it colluded with his former partners in CTA

to defraud him of his rightful interest in the new venture. The district court dismissed the complaint under Federal Rule of Civil Procedure 9(b), which contains heightened pleading requirements for fraud, and the plaintiffs now challenge that decision. Because the complaint does not adequately allege with any specificity a fraud or other misbehavior on the part of Goldman Sachs, we affirm the judgment of the district court.

## I.  BACKGROUND

We draw the following allegations from the complaint. In 1996, Lewis Borsellino, Gerald Putnam, Marrgwen Townsend, and Stuart Townsend formed CTA. The planned business of CTA was selling access to a "day trading room" in which individuals could access NASDAQ electronically for the purpose of engaging in multiple, short-term stock transactions.[1] The technology that facilitated this activity was known as a Small Order Execution System ("SOES"). Borsellino's main role as a partner at CTA was recruiting day traders to be customers. The business formally opened in May of 1996.

The key aspect of CTA's SOES was its "point & click" software, which allowed CTA day traders easy access to NASDAQ. The point & click software was developed by the Townsends through the use of CTA's financial and technological resources.

In 1996, Putnam began to network day trading rooms around the country into CTA's system, giving numerous

---

[1] The viability of day trading as a profit generating strategy has been widely discussed in the press. *See generally* Burton G. Malkiel, *Day Trading and its Dangers*, Wall St. J., Aug. 3, 1999, at A22.

traders access to CTA's technology without actually having to be physically present at CTA's day trading room. This activity continued until some point in either late 1997 or early 1998. During this period, Putnam and the Townsends took millions of dollars in commissions from this networking; these funds were not shared with Borsellino or with CTA. The plaintiffs allege that the federal wire fraud statute, 18 U.S.C. § 1343, was violated each time a commission was sent to Putnam or one of the Townsends.

Using the new technology, Putnam and the Townsends started an Electronic Communication Network ("ECN") in 1997 called Archipelago. Like other ECNs, Archipelago allowed day traders to make electronic trades on the NASDAQ in much the same way that CTA's SOES did. Archipelago's technological infrastructure was built on top of CTA's. The plaintiffs allege that Archipelago could not have functioned during its initial stages without parasitically drawing off the resources of CTA's SOES.

During the first two weekends in January 1997, Archipelago underwent and passed several tests conducted by NASDAQ and the Securities Exchange Commission ("SEC") to assess the effectiveness of its ECN technology. Upon passing the tests, Archipelago became one of only four companies approved by the SEC to operate an ECN business. The plaintiffs allege that Putnam and the Townsends arranged for the testing to occur when Borsellino was not likely to be present. They also contend that the testing constituted a violation of the federal wire fraud statute, 18 U.S.C. § 1343, and was in violation of federal prohibitions on misuse of telecommunications access devices, 18 U.S.C. § 1029(a).

Around the time of the 1997 testing, Goldman Sachs began investigating the possibility of investing in Archipelago through a series of "getting to know you" talks.

Goldman Sachs employees participated in the NASDAQ and SEC testing phase of Archipelago. After Goldman Sachs saw Archipelago's success in the testing phase, it agreed to invest tens of millions of dollars in the venture. The talks leading up to the investment took place in 1997 and 1998 at dates unknown to the plaintiffs. At this point, Goldman Sachs was aware that CTA had an interest in Archipelago, and the complaint alleges that Goldman Sachs conspired with Putnam and Townsend to wait until the partnership with Borsellino could be terminated before making an investment.

In the fall of 1997, Putnam and the Townsends told Borsellino that they no longer wanted to be in the business of operating a day trading room and stated that they did not believe CTA could be run as a profitable venture. Borsellino filed a shareholder's derivative suit in state court seeking an accounting, and Putnam and the Townsends offered to settle for $250,000—the amount of Borsellino's original investment in CTA. Borsellino agreed, and on March 4, 1998, he entered into a settlement agreement foreclosing all of his claims against Putnam and the Townsends.

Three months later, in June 1998, Goldman Sachs and Archipelago signed a letter of intent, whereby Goldman Sachs promised to invest $25 million in exchange for a 25% interest in Archipelago. The plaintiffs allege that Goldman Sachs subsequently engaged in document destruction and failed to disclose documents related to its involvement in the Archipelago testing phase in 1997. In 2000, the plaintiffs filed another lawsuit against Putnam and the Townsends in state court, claiming that they defrauded Borsellino into prematurely settling his first lawsuit, and improperly diverted CTA's assets in forming Archipelago. According to a motion for judicial notice filed with this court, Goldman Sachs, which is not a party to the

second state suit, answered a discovery request and produced documents dated between 1997 and 1998 pertaining to its decision to invest in Archipelago. The second state court suit is currently pending.

On August 1, 2005, the plaintiffs filed this suit against Goldman Sachs in the U.S. District Court for the Northern District of Illinois, claiming: (1) violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1029 & 1343; (2) tortious interference with economic advantage; (3) tortious interference with fiduciary relationship; (4) civil conspiracy; (5) willful and wanton spoliation of evidence; and (6) negligent spoliation of evidence.

The district court dismissed all of the plaintiffs' claims with a citation to several cases arising under the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). After the initial dismissal, the court offered the plaintiffs an opportunity to replead, but the plaintiffs asserted that they could not. The court then dismissed the case with prejudice and the plaintiffs appeal the dismissal of all claims except the RICO claim.

## II.  DISCUSSION

### A.  Standard of review

We review the district court's dismissals, whether under Rule 9(b) or the less rigorous pleading standard contained in Rule 8(a), de novo. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997). We take the plaintiffs' factual allegations as true, and draw all reasonable inferences in their favor. *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 725-26 (7th Cir. 1998).

**B.  Claims of interference with economic advantage, interference with fiduciary relationship, and civil conspiracy**

Rule 9(b) of the Federal Rules of Civil Procedure provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This heightened pleading requirement is a response to the "great harm to the reputation of a business firm or other enterprise a fraud claim can do." *See Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999) (internal quotations omitted). Thus, "[a] plaintiff claiming fraud or mistake must do more precomplaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate." *Id.* A complaint alleging fraud must provide the "the who, what, when, where, and how." *See U.S. ex rel. Gross v. AIDS Research Alliance-Chicago,* 415 F.3d 601, 605 (7th Cir. 2005) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

Although claims of interference with economic advantage, interference with fiduciary relationship, and civil conspiracy are not by definition fraudulent torts, Rule 9(b) applies to "averments of fraud," not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027-28 (9th Cir. 2005); *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 160-61 (3d Cir. 2004). A claim that "sounds in fraud"—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements. *Rombach v. Chang*, 355 F.3d 164, 170-71 (2d Cir. 2004); *see Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990). The first paragraph of the complaint begins: "This action arises out of a pattern of fraud and racketeering activity," and the complaint goes on to accuse Goldman Sachs of being "a

conspirator with Putnam in defrauding Plaintiff into abandoning his interest in CTA, and thus his rights to one-third of Archipelago." This fraud, it is charged, was a tortious interference with the plaintiffs' economic advantage and CTA's fiduciary relationship; Goldman Sachs allegedly conspired with Putnam and the Townsends to commit the fraud. *See Castillo v. First City Bancorporation of Tex., Inc.,* 43 F.3d 953, 961 (5th Cir. 1994) (claim of civil conspiracy to commit fraud falls under Rule 9(b)); *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir. 1985) (same). Furthermore, the appellants' opening brief is riddled with references to fraud, showing that this theory pervades their entire case, but especially these three claims. *See Kennedy v. Venrock Assoc.*, 348 F.3d 584, 594 (7th Cir. 2003) (arguments in appellant's brief can further shed light on whether the complaint is grounded in fraud). Perhaps recognizing this, the appellants concede that Rule 9(b) applies to the factual allegations supporting these three claims.

### 1.  Tortious interference with economic advantage

The Supreme Court of Illinois has laid out the elements of a claim of tortious interference with prospective economic advantage: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *See Voyles v. Sandia Mortgage Corp.*, 751 N.E.2d 1126, 1133-34 (Ill. 2001) (quoting *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (Ill. 1996)). In *Voyles*, the Supreme Court of Illinois held that the plaintiff, a mortgagor, could not recover against the mort-

gagee bank because he could not demonstrate that the third element was met. 751 N.E.2d at 1134. The plaintiff had alleged that he was injured by the bank's adverse reports to credit agencies, but made clear that the reports were true. *See id.* The court concluded that the plaintiff could not demonstrate that any interference in his economic advantage was unjustified because the reports were "accurate and proper." *Id. Voyles* was decided under Illinois's fact pleading regime, and Rule 9(b) does not require fact pleading, *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992), but the case is nevertheless instructive, for the complaint must show that the plaintiffs are entitled to relief.

Here, even accepting all of the plaintiffs' allegations at face value, there was no interference by the defendant that could have induced a breach or termination of Borsellino's expectancy. In other words, the complaint fails to describe any sort of plausible "what" of the fraud. *See DiLeo*, 901 F.2d at 627. The plaintiffs accuse Goldman Sachs of conspiring with Putnam and the Townsends to cut Borsellino out of the deal, but this makes neither economic nor common sense. Why would Goldman Sachs prefer cutting Borsellino out—and creating a situation in which he could, if he found out about the misuse of CTA's resources, threaten Goldman Sachs's claim to Archipelago—rather than allowing him into the venture? Its investment and return would presumably have been exactly the same whether Borsellino participated or not. More fundamentally, if Goldman Sachs learned that Putnam and the Townsends had built Archipelago upon a fraud, why wouldn't it walk away instead of joining the fraud and going ahead with the investment? *See Tricontinental Indus. v. PricewaterhouseCoopers, LLP*, 2007 WL 102985, at *6 (7th Cir. Jan. 17, 2007) (Rule 9(b) does not require pleading state of mind, but complaint must afford some basis for believing that plaintiffs can

prove scienter). The plaintiffs' complaint does not shed any light on the fundamental implausibility of the fraud, and nor did plaintiffs' counsel do so at oral argument in this court.

### 2. Tortious inducement of a breach of fiduciary duty

For similar reasons, the plaintiffs' claim of tortious inducement of a breach of fiduciary duty must fail. Under Illinois law, a party is liable for tortious inducement if a plaintiff demonstrates that the defendant (1) colluded with a fiduciary in committing a breach; (2) knowingly participated in or induced the breach of duty; and (3) knowingly accepted the benefits resulting from that breach. *See Regnery v. Meyers*, 679 N.E.2d 74, 80 (Ill. App. Ct. 1997).

As described above, the plaintiffs have not alleged any active misbehavior on the part of Goldman Sachs, and they have failed to cite any cases prohibiting activity of the sort described in the complaint. Moreover, it is unclear how Goldman Sachs could have "accepted the benefits" of a breach of a fiduciary duty, for the complaint does not explain how a breach would have benefitted it in any way. Goldman Sachs seemingly could have acquired its 25% stake in Archipelago whether Borsellino was entitled to some of the remaining 75% or not. The claim fails because of an overall lack of particularity in the allegations of tortious inducement of a breach of fiduciary duty.

### 3. Civil conspiracy

The plaintiffs' civil conspiracy claim was properly dismissed because the complaint fails to state with particularity the circumstances constituting the conspiracy

between Goldman Sachs, Putnam and the Townsends. To succeed in a claim of civil conspiracy under Illinois law, the plaintiffs must eventually establish: (1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff. *See McClure v. Owens Corning Fiberglas Corp.,* 720 N.E.2d 242*,* 258 (Ill. 1999). "The agreement is a necessary and important element of this cause of action." *Id.* (internal quotations omitted). "A defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." *Adcock v. Brakegate*, 645 N.E.2d 888, 894 (Ill. 1994).

Here, the complaint tells us nothing about the nature of the purported agreement to defraud the plaintiffs, such as when it was made or which individuals at Goldman Sachs arranged the conspiracy. *See Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006) ("Rule 9(b) requires that facts such as the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff be alleged in detail.") (internal quotations omitted). Again, the factual allegations as to Goldman Sachs are simply that it participated in the testing of Archipelago for SEC compliance and that it did not invest in Archipelago until Archipelago's principals had cut off business ties with Borsellino. This fact and a handful of unreasonable inferences are not enough to satisfy Rule 9(b)'s particularity requirements. In short, the plaintiffs have offered none of the critical details regarding the alleged fraud conspiracy as it relates to Goldman Sachs. The civil conspiracy claim was therefore properly dismissed.

### C.  Spoliation of evidence

The plaintiffs also contend that the district court erred in dismissing their claims for spoliation of evidence. The parties disagree over whether the heightened pleading requirements of Rule 9(b) apply to these claims, but we need not decide that dispute, for the claims fail even under the looser pleading requirements of Rule 8(a).

At the outset, we note that the plaintiffs brought their spoliation charges in two separate claims—one for intentional spoliation of evidence and one for negligent spoliation. The Supreme Court of Illinois has emphasized, however, that the state does not recognize a tort of intentional spoliation of evidence, and that negligent spoliation is not itself an independent tort but rather a type of negligence. *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 269-70 (Ill. 1995); *see Cangemi v. Advocate S. Suburban Hosp.*, 845 N.E.2d 792, 815 (Ill. App. Ct. 2006) ("Plaintiffs cite to no case that specifically recognizes intentional spoliation of evidence as a tort in Illinois. Neither have we found such an Illinois case."). We thus analyze the two charges of spoliation as an ordinary negligence claim, which to prevail will eventually require showing a duty (in this case to protect documents), a breach of that duty, causation, and damages. *Boyd*, 652 N.E.2d at 270.

A claim of spoliation of evidence is connected to the merits of the underlying suit. *See Gawley v. Ind. Univ.*, 276 F.3d 301, 316 (7th Cir. 2001). If a plaintiff cannot prevail in the underlying suit even with the allegedly lost or destroyed evidence, then a claim for spoliation will fail because the plaintiff cannot prove damages. "This requirement prevents a plaintiff from recovering where it can be shown that the underlying action was meritless." *Boyd*, 652 N.E.2d at 271 n.2; *see also Kelly v. Sears Roebuck & Co.*, 720 N.E.2d 683, 694-95 (Ill. App. Ct. 1999).

As the discussion above shows, the plaintiffs' case is indeed without merit. All of their other claims were properly dismissed. The plaintiffs have defined the documents they seek as "documentation concerning Goldman and Archipelago dated prior to June of 1998," and contend that, if produced, this paperwork would further demonstrate the existence of a conspiracy between Goldman Sachs and Borsellino's former partners to defraud Borsellino into prematurely selling his interest in CTA. At the outset, the plaintiffs' stated premise throughout the complaint, that there must be substantial paperwork prior to the signing of the letter of intent, is unsound. Goldman Sachs has cited several business treatises which explain that in a negotiated stock purchase, most due diligence and records will *follow* the signing of a letter of intent, not *precede* it. *See* Appellee's Br. at 26-27. Nevertheless, Goldman Sachs *did* produce pre-1998 documents in Borsellino's second (and ongoing) state court lawsuit. The plaintiffs acknowledge receipt of those documents in their reply brief and concede that they do not show any mischievous plotting that would allow them to prevail in their claims of fraud. The plaintiffs cannot now redefine the documents they seek as all pre-1998 paperwork concerning Goldman Sachs's investment in Archipelago that discusses a nefarious collaboration between Goldman Sachs, Putnam, and the Townsends. *Cf. Cangemi*, 845 N.E.2d at 815 (plaintiffs could not show that but for destruction of document, they would have prevailed in underlying suit because they possessed document at one time). The plaintiffs ask us to assume that even though they received the documents they requested, other documents containing a smoking gun admission by Goldman Sachs existed and were destroyed. In light of the weakness of the plaintiffs' other claims, this invitation to stack inference upon inference is not a reasonable one.

We finally offer a word as to the district court's dismissal of the plaintiffs' claims with prejudice. By refusing to submit amended pleadings after the district court indicated that the original complaint was deficient, the plaintiffs essentially conceded the futility of any amendment. Such action was a reasonable basis for the district court to dismiss the case with prejudice. *See Forman v. Davis*, 371 U.S. 178, 182 (1962). The plaintiffs have not demonstrated that the district court abused its discretion in that decision.

## III.  CONCLUSION

The judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*