In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3263

ROBIN WILLIE TURNER,

*Plaintiff-Appellant,*

*v.*

HIRSCHBACH MOTOR LINES,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 10 cv 50326 — **Philip G. Reinhard**, *Judge.*

ARGUED JULY 6, 2016 — DECIDED APRIL 24, 2017

Before POSNER, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Plaintiff Robin Turner sued defendant Hirschbach Motor Lines for failing to hire him as a truck driver after his routine drug test was positive for marijuana use. Turner alleges the decision was racially discriminatory, but the district court granted summary judgment against him. Turner argues that the district court erred in requiring him to offer evidence both (a) that racial animus of a Hirsch-

bach employee who was not a decision-maker caused the decision not to hire him, and (b) that Hirschbach and a medical doctor came to an agreement to cancel Turner's request for a second drug test. We affirm. The district court correctly concluded that Turner lacked evidence supporting his federal claim for race discrimination and his state-law claim for civil conspiracy.

Hirschbach is a commercial trucking company. It offered Turner a job as a driver contingent on his completion of orientation and a drug test, among other conditions. Turner is African American. Throughout orientation, Turner asserted, he was subjected to insults by Nancy Thompson, Hirschbach's employee responsible for evaluating and hiring applicants. Turner testified that she stared at him and once whispered insults to him.

During orientation, Turner tested positive for marijuana use. An independent medical facility collected a urine sample, which was then sent to MedTox Laboratories for testing. MedTox split the sample in two, tested one part, and stored the other. As required by United States Department of Transportation regulations, MedTox reported the positive result to Hirschbach's independent medical review officer, Dr. Richard Thompson (no apparent relation to Nancy Thompson). In turn, Dr. Thompson contacted Turner through Hirschbach and notified him that his results were positive for marijuana. See 49 C.F.R. § 40.97(b). Hirschbach's safety officer, Lester Winegarden, then told Turner he had the right to request that the second half of his sample be tested by a different laboratory (a "split test" covered by 49 C.F.R. § 40.171). Turner told Winegarden he wanted the split test, though he admits that he had not requested the test from Dr. Thompson.

The split test never took place, and the reason for that is disputed. Turner testified in his deposition that Winegarden told him the split test would be a "waste of time" and that he was "never going to pass the test." Turner recalled asking: "Are you telling me there's some racial b***s*** you're pulling me into?" to which Winegarden responded, "Yeah, you got it. You got it now." Turner asserts that Winegarden then cancelled the split test by falsely reporting to Dr. Thompson that Turner had changed his mind about it. Winegarden denied all this and testified that he would have cancelled a split test only if Turner had in fact changed his mind about it.

The initial positive test result was verified by Dr. Thompson and sent to Hirschbach. Turner decided to leave the company's orientation program and was not hired. Hirschbach, as permitted by Department of Transportation regulations, reported Turner's positive drug test to an industry consortium from which future employers could, with Turner's permission, seek his previous test results. See 49 C.F.R. §§ 40.25, 40.345, 40.349.

Turner then filed this suit against Hirschbach under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000–e(2)(a)(1), as well as 42 U.S.C. § 1981 and Illinois civil conspiracy law. He claimed that Hirschbach refused to hire him because of his race, discriminated against him by reporting his drug results to the industry consortium, and conspired with Dr. Thompson to cancel the second or split test.

The district court granted summary judgment for Hirschbach. Because Turner had not responded to the majority of Hirschbach's statements of undisputed facts, the court deemed most of them undisputed. The court considered the

theory that Winegarden's alleged racial animus caused the decision not to hire Turner, using a so-called "cat's paw" theory of liability for his Title VII and § 1981 claims. Under that theory, Turner needed to offer evidence that the racial animus of Winegarden, who was not a decision-maker, was a proximate cause of the adverse decision. See *Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 604 (7th Cir. 2014); *Smith v. Bray*, 681 F.3d 888, 897 (7th Cir. 2012).

The district court concluded that such a claim could not succeed. Giving Turner the benefit of conflicts in the evidence, as required when considering Hirschbach's summary judgment motion, Turner had offered evidence that Winegarden cancelled the split test and acted based on racial animus. The court found that Turner lacked evidence that Winegarden's racial animus caused him not to be hired because he offered no evidence that the MedTox drug test was unreliable or that the split test would have been negative. The court also found that Turner did not offer sufficient evidence for a reasonable jury to infer that Nancy Thompson herself decided not to hire him because of racial animus rather than his positive test result. Nor did Hirschbach discriminate against Turner by reporting his positive drug test result to the industry consortium, the court concluded. Hirschbach presented undisputed evidence that it reported positive tests as a matter of routine and as required by federal regulations. Finally, the court concluded that the civil conspiracy claim failed because Turner lacked evidence that Hirschbach and Dr. Thompson had come to an agreement to cancel the split test.

Turner argues that he was not required to offer evidence to support an inference that the allegedly improper cancellation of the split test caused him not to be hired. Turner asserts

without elaboration that he did not need to provide such evidence because the cancellation violated Department of Transportation regulations and therefore suffices to prove discrimination.

We disagree with Turner's arguments. Winegarden did not make the decision not to hire Turner. Nancy Thompson was the decision-maker. Under a cat's paw theory of liability, the challenge is to show a causal link between the presumed unlawful animus of someone like Winegarden, who did not make the decision, and the decision itself. The district court properly required Turner to support his cat's paw theory with evidence casting doubt on the reliability of the initial drug test or the positive result itself. As the district court correctly determined, Turner needed evidence that Thompson's failure to hire him was proximately caused by Winegarden's presumably discriminatory action—cancelling the split test. *Nichols*, 755 F.at 604; *Smith*, 681 F.3d at 897.

Undisputed evidence shows that Thompson would not hire someone who fails a drug test and that Turner had failed a drug test administered by an independent medical agency. Without evidence that the drug test was a false positive or some other evidence showing that the split test would have come back negative and cleared Turner, a jury could not reasonably infer that Thompson's hiring decision was proximately caused by Winegarden's presumed racial animus. See *Johnson v. Koppers, Inc.*, 726 F.3d 910, 915 (7th Cir. 2013) (no inference that colleague's story concocted out of racial animus caused supervisor's termination decision when undisputed facts showed that plaintiff misbehaved); *Young v. Dillon Companies, Inc.*, 468 F.3d 1243, 1253 (10th Cir. 2006) (no inference

that biased investigator's report caused termination when in-
vestigator did not make recommendation and supervisor in-
dependently reviewed report and other evidence showing
misconduct).

Turner also contends that a purported violation of Depart-
ment of Transportation regulations is enough to show dis-
crimination by Thompson, who made the hiring decision. The
district court correctly rejected that argument. Turner has not
offered any evidence that Thompson herself knew he had re-
quested a second test. The regulations do not prohibit an em-
ployer from making a hiring decision on the basis of one pos-
itive test. Turner has not offered any evidence that Thompson
violated the regulations.

A failed drug test does not necessarily mean a plaintiff like
Turner cannot succeed on a discrimination claim, but he
would need additional evidence to permit a reasonable infer-
ence that the decision not to hire him was based on his race.
For example, if an employer did not treat similarly situated
applicants of other races in a similar way when they tested
positive for marijuana, an inference of discrimination would
find some traction. But Turner did not offer any evidence that
Thompson treated differently any similarly situated appli-
cants of other races who failed one drug test. The district court
correctly concluded that a jury could not reasonably infer that
Thompson was motivated by Turner's race rather than his test
result. *Stockett*, 221 F.3d at 1002 (no discrimination where em-
ployee who failed drug test was fired under clear policy re-
garding drug use and there was no evidence of direct discrim-
ination by supervisor or of similarly-situated employees
treated differently); *Tatum v. City of Berkeley*, 408 F.3d 543, 550–
51 (8th Cir. 2005) (termination after positive drug test result

was facially legitimate under employer's zero-tolerance drug policy).

Finally, Turner argues that he offered sufficient evidence that Hirschbach and Dr. Thompson engaged in a civil conspiracy under Illinois law by cancelling the split test. Turner contends that it does not matter whether Dr. Thompson and Winegarden came to an agreement to cancel the split test against his wishes. What matters, he maintains, is that Dr. Thompson's failure to confirm with him directly whether he had changed his mind meant that Dr. Thompson somehow became a party to a conspiracy to cancel the split test.

The district court correctly concluded that Turner needed evidence of an agreement between Winegarden and Dr. Thompson to support his claim of civil conspiracy. See *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007). Under Illinois tort law, a civil conspiracy requires "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Id.*, citing *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999). An agreement is "a necessary and important" element of this cause of action, and "[a] defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 884 (Ill. 1994). Turner offered no evidence that Dr. Thompson agreed with Winegarden to cancel the second test against Turner's wishes, and Turner has not even claimed that Dr. Thompson knew he had not changed his mind.

The judgment of the district court is AFFIRMED.